658 So.2d 750 (1995)
Jessie Keith YOUNG, Plaintiff-Appellant,
v.
Thomas R. BROWN, et al., Defendants-Appellees.
No. 27018-CA.
Court of Appeal of Louisiana, Second Circuit.
June 21, 1995.
*751 William D. Hall, Shreveport, for appellant.
James S. Denhollem, Rountree, Cox, Guin & Achee by Dale G. Cox, Shreveport, for appellees.
Before BROWN and WILLIAMS, JJ., and EDWARDS, J. Pro Tem.
BROWN, Judge.
Plaintiff, Jessie Keith Young, brought suit against defendants, Thomas R. Brown and his insurer, Allstate Insurance Company, for injuries sustained when Brown shot plaintiff. Allstate sought summary judgment because of a policy exclusion for damages arising from intentional or criminal acts of the insured. Brown was charged with and pled guilty to negligent injuring. The trial court granted summary judgment in favor of Allstate and plaintiff appeals. We reverse.

SUMMARY JUDGMENT
Summary judgment is the application of law to facts which are not in dispute. Thus, a trial court must identify the legal issues and the facts material to the issues and determine whether those facts are genuinely in dispute.
A motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to a material fact, and that mover is entitled to judgment as a matter of law. LSA-C.C.P. Art. 966; Aufrichtig v. Progressive Men's Club, 25,581 (La.App.2d Cir. 03/30/94), 634 So.2d 947; Leonard v. Stephens, 588 So.2d 1300 (La.App.2d Cir.1991).
We are presented with the legal issue of the meaning of the language "intended or criminal acts" as contained within the exclusions portion of the insurance policy. Although actual questions of intent are in dispute, plaintiff's factual narration is accepted by Allstate for the purposes of this summary judgment motion.

FACTS
In the early morning hours of June 12, 1993, plaintiff and a group of friends went to the home of Ruth Yates in south Shreveport looking for her nephew, Willie Yates. Upon arriving, they were told that Willie could be found sleeping in a pickup truck in front of the house. When plaintiff approached the truck, he found it occupied by Ruth Yates and Thomas Brown. Plaintiff and Ms. Yates got into an argument. Brown, who had consumed several beers and may have been intoxicated, concluded that plaintiff and his companions were a threat to Ms. Yates. Brown got out of the truck armed with a gun. Brown fired a shot into the ground in an effort to disperse plaintiff and his companions. Thereafter, Brown stumbled as he approached the group and fell into plaintiff. *752 The gun fired and plaintiff was shot in the stomach. Brown denies any intent to shoot or harm plaintiff.
Plaintiff, who was hospitalized for eighteen days, incurred substantial medical bills. Brown was charged with and pled guilty to negligent injuring. Plaintiff filed suit against Brown and Allstate Insurance Company ("Allstate"), seeking damages for pain and suffering, mental anguish, medical expenses, lost wages and loss of earning capacity. At the time of the shooting, Brown was covered by a mobile home-owners and public liability insurance policy written by Allstate. This policy excluded damages resulting from an insured's intentional or criminal act.
Allstate moved for summary judgment on the question of coverage. In support of its motion, Allstate attached a transcript of defendant's guilty plea and sentencing colloquy in the criminal proceeding. Allstate argued that Brown's guilty plea to the charge of negligent injuring constituted proof that the acts leading up to plaintiff's injury were criminal in nature. Thus, under the terms of the policy, there was no coverage for plaintiff's injuries. The trial court agreed and granted summary judgment in favor of Allstate.

DISCUSSION

Criminal Acts and the Exclusion of Insurance Coverage
The insurance policy issued by Allstate to Thomas R. Brown lists exclusions from coverage, including the following:
We do not cover any bodily injury or property damage which may reasonably be expected to result from the intentional or criminal acts of an insured person or which is in fact intended by an insured person.
Allstate would have us read the clauses of the exclusion as disjunctive phrases. Therefore, according to Allstate, no coverage is provided for bodily injury reasonably expected to result from the intentional or criminal acts of an insured person or which is in fact intended by an insured person. Because the insured pled guilty to the crime of negligent injuring, Allstate contends that the criminal acts clause excludes coverage.
We are guided in our analysis and application of the instant policy exclusion by several elementary principles regarding the construction of insurance policies. These principles were concisely summarized in Louisiana Ins. Guar. v. Interstate Fire & Casualty Co., 93-C-0911 (La. 01/14/94), 630 So.2d 759:
An insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Civil Code. The judicial responsibility in interpreting insurance contracts is to determine the parties' common intent.
The parties' intent as reflected by the words in the policy determine [sic] the extent of coverage. Such intent is to be determined in accordance with the general, ordinary, plain and popular meaning of the words used in the policy, unless the words have acquired a technical meaning.
An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. Absent a conflict with statutory provisions or public policy, insurers, like other individuals, are entitled to limit their liability and to impose and to enforce reasonable conditions upon the policy obligations they contractually assume.
Ambiguity in an insurance policy must be resolved by construing the policy as a whole; one policy provision is not to be construed separately at the expense of disregarding other policy provisions.
If after applying the other general rules of construction an ambiguity remains, the ambiguous contractual provision is to be construed against the drafter, or, as originating in the insurance context, in favor of the insured. This rule of strict construction requires that ambiguous policy provisions be construed against the insurer who issued the policy and in favor of coverage to the insured. Under this rule, "equivocal provisions seeking to narrow the insurer's obligation are strictly construed against the insurer, since these are prepared by *753 the insurer and the insured had no voice in the preparation." ...
"Ambiguity will also be resolved by ascertaining how a reasonable insurance policy purchaser would construe the clause at the time the insurance contract was entered." The court should construe the policy "to fulfill the reasonable expectations of the parties in the light of the customs and usages of the industry." ...
Yet, if the policy wording at issue is clear and unambiguously expresses the parties' intent, the insurance contract must be enforced as written....
Louisiana Ins. Guar., 630 So.2d at 763. (Citations omitted.)
The facts as outlined in this summary judgment motion present a subtle issue concerning the language of the exclusion. The purpose of the exclusion is a recognition of a long-standing public policy against insuring illegal activities and thus, promoting their commission. Indeed, the policy clearly denies coverage for intentional acts that cause injury and for injuries specifically intended by the insured.
The exclusion goes further, however, to exclude coverage for damages arising from the criminal acts of an insured. This too is in accord with public policy. The phrase "criminal acts" obviously includes reprehensible conduct resulting in the commission of a general or specific intent crime. These offenses, such as murder or aggravated battery, are such that no reasonable purchaser of a liability policy could expect to insure himself against losses arising from such behavior. And yet, Louisiana's statutes also criminalize acts resulting from non-intentional misconduct. Losses, however, resulting from negligent, non-intentional conduct are precisely the losses a liability policy buyer expects to insure against. As such, we take issue with the legal breadth accorded the phrase "criminal acts" by the trial court.
We have already recognized the strong public policy that prevents wrongdoers from indemnifying themselves against their own intentional criminal acts. There is, however, another public policy related to the protection of the innocent injury victim. It has long been the recognized public policy of this state that liability insurance is issued for the protection of the general public as well as for the security of the insured. LSA-R.S. 22:655; Hughes v. Southeastern Fidelity Ins. Co., 340 So.2d 293 (La.1976); West v. Monroe Bakery, 217 La. 189, 46 So.2d 122 (1950); White v. State, Dept. of Public Safety, 569 So.2d 1001 (La.App. 1st Cir.1990). These public policies must be balanced in accord with the function performed by liability insurance and the expectations of a reasonable insurance buyer.
Negligence is the most common basis for tort liability. While liability also arises from intentional torts, insurers have historically refused to cover losses resulting from intentional misconduct, thereby promoting public policy and discouraging socially unacceptable behavior. Because negligence is characterized by thoughtlessness, inattention, or inadvertence, it lacks the wilfulness element that vilifies intentional misconduct. As such, it has never been against public policy to insure against liability arising from the purely negligent acts of an insured. Insurance is typically purchased to provide protection from losses caused by accidental or inadvertent conduct. With these precepts in mind, we turn our attention to the facts applicable to this summary judgment motion.
Plaintiff was injured when defendant, while wielding a gun, stumbled and fell. The gun accidentally discharged and plaintiff was struck in the abdomen. Under these facts, it is clear that defendant's actions fell below those expected of a reasonably prudent person and thus constituted negligence. Defendant was charged with and pled guilty to negligent injuring, a violation of LSA-R.S. 14:39, which states in part the following:
Negligent injuring is the inflicting of any injury upon the person of another by criminal negligence.
Critical is the definition of the term "criminal negligence," which is defined in LSA R.S. 14:12:
Criminal negligence exists when, although neither specific nor general criminal intent is present, there is such disregard of the interest of others that the offender's *754 conduct amounts to a gross deviation below the standard of care expected to be maintained by a reasonably careful man under like circumstances. (Emphasis added.)
Our legislature has defined negligence for the purpose of criminalizing certain conduct. Criminal negligence, like tort negligence (albeit gross), is based upon accidental or inadvertent behavior. As in the instant case, the same conduct leading to a claim of criminal negligence is also actionable in tort. And yet, were defendant's conduct not chargeable as a crime, there would be no exclusion under the policy short of a showing that defendant acted intentionally in shooting plaintiff or that defendant intended to inflict injury. Because the negligence in question led to a criminal charge and conviction, Allstate would deny coverage. Even if criminal charges were not filed by the prosecuting authority, Allstate would claim a right to prove guilt in the civil proceeding.
Modern statutory and regulatory provisions govern most facets of human behavior and social interaction and are so extensive that liability seldom arises apart from some manner of illegal conduct. Sledge v. Continental Cas. Co., 25,770 (La.App.2d Cir 06/24/94), 639 So.2d 805; see then-Judge Cardozo in Messersmith v. American Fidelity Co., 232 N.Y. 161, 133 N.E. 432 (1921). Indeed, statutes have so covered the field that fault can seldom occur that the conduct involved is not also considered a crime. It is illegal, in some instances, to possess a firearm, speed in automobiles, drive under the influence of alcohol, and let your pet outside without a leash. Allstate's suggested result can hardly have been envisioned by the parties.
The term "criminal acts," as used in the coverage exclusion is susceptible of more than one meaning. Allstate reads the term to mean any action that results in a criminal charge. An insured, however, could justifiably conclude otherwise. Nestled between exclusions for injuries resulting from intentional acts and for intentionally inflicted injuries, a reasonable purchaser could have understood the basis of the exclusion to be intentional misconduct or intentional criminal acts, thereby allowing coverage for damages resulting from criminal negligence. An exclusion for negligent acts, albeit criminally negligent acts, is thus counter-intuitive to the wording of the exclusion and serves to circumvent the very purpose for which liability insurance is purchased. Such an exclusion is likewise contrary to Louisiana's public policy that liability insurance should protect innocent accident victims from losses resulting from the negligent acts of an insured.
Allstate cites two cases from Alabama and Indiana in which plaintiffs asserted ambiguity in the policy exclusion language based upon the equivocal meaning of the term "criminal act." See Smith v. Arrow Transp. Co., Inc., 571 So.2d 1003 (Ala.1990) [the insured pled guilty to second degree assault]; Allstate v. Barnett, 816 F.Supp. 492 (S.D.Ind. 1993) [an insured shot his girlfriend's lover during a protracted argument and fight. The insured pled guilty to criminal recklessness while armed with a deadly weapon].
While we take note of these authorities, we do not find them persuasive. Both cases illustrated a willingness to rely on the respective state's public policy allowing an insurer to exclude coverage for certain losses; however, neither case reflected a discussion of the public policy concerning the protection of innocent injury victims. Based upon our recognition of the competing public policies and the reasonable expectation of the insured, we decline to follow these cases.
An exclusion of liability insurance coverage for non-intentional, inadvertent acts of criminal negligence violates Louisiana's public policy established for the protection of innocent injury victims. Furthermore, we find the instant insurance exclusion to be ambiguous. The term "criminal acts" is equivocal and susceptible of more than one interpretation based upon its usage and the tenor of the exclusionary language. A reasonable liability insurance buyer could construe the instant exclusion to deny coverage only for intentional criminal acts, thereby allowing coverage for damages arising out of non-intentional, criminal negligence. In light of this ambiguity, we construe the policy to provide coverage for damages arising from non-intentional acts that may rise to the level of criminal negligence. Such an interpretation recognizes the insured's reasonable expectations *755 of coverage while voiding the exclusion only to the extent that it violates public policy.

Admissibility of Defendant's Sentencing Transcript
Plaintiff also argues that the transcript of his sentencing colloquy was admitted into evidence contrary to this court's recent pronouncement in Miramon v. Woods, 25,850 (La.App.2d Cir. 06/22/94), 639 So.2d 353. Our findings in support of insurance coverage are sufficient to reverse the granting of summary judgment in favor of Allstate and we do not address the admissibility of the sentencing transcript.

CONCLUSION
We find the language excluding insurance coverage for damages resulting from criminal acts to be ambiguous and susceptible of differing interpretations. Furthermore, the instant exclusion violates public policy when applied to non-intentional, criminally negligent behavior and can operate to deny coverage contrary to the reasonable expectations of a purchaser of liability insurance. Accordingly, we reverse the summary judgment in favor of Allstate and construe the instant insurance policy to provide coverage for losses resulting from the criminally negligent acts of defendant. Costs are assigned to Allstate.
REVERSED.