# United States Court of Appeals
## For the First Circuit

No. 04-1751
No. 04-1778

DANIEL LITTLEFIELD,

Plaintiff, Appellant,

v.

ACADIA INSURANCE COMPANY,

Defendant, Appellee,

KAREN K. HARTMAN,

Defendant, Appellant.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Paul J. Barbadoro, U.S. District Judge]

Before

Lynch, Circuit Judge,
Stahl, Senior Circuit Judge,
and Lipez, Circuit Judge.

Gordon A. Rehnborg, Jr., with whom Mary Ann Dempsey and Wiggin
& Nourie, P.A., were on brief, for Appellant Daniel Littlefield.
Leonard W. Langer, with whom Marshall J. Tinkle and Tompkins,
Clough, Hirshon & Langer, P.A., were on brief, for appellee.

December 8, 2004

**LIPEZ, Circuit Judge**.  This case requires us to decide whether a provision of a yacht insurance policy excluding coverage for "any loss, damage or liability willfully, intentionally or criminally caused or incurred by an insured person" is ambiguous as applied to an insured who was convicted of criminally negligent homicide after his involvement in a fatal boat collision, and, if not ambiguous, whether its enforcement would render coverage under the policy illusory.  Answering both questions in the negative, we affirm the district court's order granting summary judgment to Defendant-Appellee Acadia Insurance Company ("Acadia") and denying summary judgment to Plaintiff-Appellant Daniel Littlefield in Littlefield's action seeking a declaratory judgment of coverage under the yacht insurance policy.

## I.

On August 11, 2002, Daniel Littlefield was operating a thirty-six-foot motorized pleasure boat insured under an Acadia "yacht policy" on Lake Winnipesaukee in New Hampshire when it collided with another boat, killing one of that boat's passengers, John H. Hartman.  In January 2003 Littlefield was indicted by a grand jury on two counts of criminally negligent homicide under sections 630:3(I) and (II) of the New Hampshire Criminal Code.[1]

---

[1]Section 630:3 provides, in pertinent part:

> I. A person is guilty of a class B felony when he causes the death of another negligently.

-2-

Also in January 2003, the victim's widow and executrix of his estate, Defendant-Appellant Karen K. Hartman ("Hartman"), brought a wrongful death action against Littlefield in New Hampshire state court alleging negligence.  On April 3, 2003, Littlefield, in turn, sought a declaratory judgment in New Hampshire state court that Acadia was obligated under the terms of the yacht policy to provide him with insurance coverage, including a defense in Hartman's wrongful death suit.[2]

> II. A person is guilty of a class A felony when in consequence of being under the influence of intoxicating liquor or a controlled drug or any combination of intoxicating liquor and controlled drug while operating a propelled vehicle, as defined in RSA 637:9, III or a boat as defined in RSA 270:48, II, he causes the death of another.

N.H. Rev. Stat. Ann. § 630:3 (2004).  All sections of the New Hampshire Criminal Code to which we refer were in effect at the time of the collision on August 11, 2002.

[2]Littlefield was permitted in state court to name Hartman, with her consent, as a defendant in his declaratory judgment action because she had standing under New Hampshire state law to contest Acadia's denial of coverage to Littlefield under the insurance policy.  Since Hartman and Littlefield are both citizens of New Hampshire, Hartman's inclusion as a defendant would defeat complete diversity.  See Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267 (1806); see also Am. Fiber & Finishing, Inc. v. Tyco Healthcare Group, LP, 362 F.3d 136, 139 (1st Cir. 2004) (discussing "abecedarian rule that there must be complete diversity among the parties to sustain diversity jurisdiction").  As Hartman's interest in this case and the relief she seeks are identical to Littlefield's, she should have been re-aligned as a plaintiff, and we re-align her.  See City of Indianapolis v. Chase Nat'l Bank, 314 U.S. 63, 75 n.4 (1941) ("the parties must be aligned according to their 'attitude towards the actual and substantial controversy'" for purposes of determining diversity of citizenship) (quoting Sutton v. English, 246 U.S. 199, 204 (1918)); see also Saylab v.

Acadia asserted that it had no such obligation under two separate provisions of the yacht policy, the first contained in Section B of the policy, which governs "Protection and Indemnity Insurance," and the second contained in Section G, which sets forth "General Conditions" applicable to the entire policy. The provision in Section B excludes from coverage "any loss, damage or liability willfully, intentionally or criminally caused or incurred by an insured person." The provision in Section G excludes coverage for "any loss, damage or expense arising out of or during any illegal activity on your part or on the part of anyone using the insured's property with your permission."[3] On May 2, 2003, Acadia removed the case to federal district court, citing both diversity and possible admiralty jurisdiction.

On June 20, 2003, a Belknap County Superior Court jury found Littlefield not guilty on the indictment's first count of "negligently causing the death of another in the consequence of being under the influence of intoxicating liquor while operating a boat on Lake Winnepesaukee," a Class A felony, but guilty of the

Harford Mut. Ins. Co., 271 F. Supp. 2d 112, 116 (D.D.C. 2003) (realigning insured as plaintiff in tort plaintiff's declaratory judgment action against insurance company).

[3]The policy defines an "insured person" as "the person named on the Declaration Page and any family member who resides with you. It shall also include any person or organization whom you permit to operate the yacht without charge and for private pleasure only." It is undisputed that Littlefield was operating the yacht with the permission of his father, the policyholder, and is an insured person under the policy.

-4-

second count of "negligently caus[ing] the death of another while operating a boat . . . and fail[ing] to keep a proper lookout," a Class B felony.  Citing principles of issue preclusion, Acadia moved for summary judgment in this case on the ground that Littlefield's criminal conviction rendered his potential liability in Hartman's wrongful death action "criminally caused or incurred," as well as "arising out of or during . . . illegal activity" within the meaning of the policy exclusions.  Littlefield brought a cross-motion for summary judgment, arguing that the language of the policy exclusion in Section B of the policy is ambiguous and should be construed to provide coverage despite his criminal conviction. Littlefield asserted that a reasonable insured would interpret "willfully, intentionally or criminally caused or incurred" liability or losses to refer only to those caused or incurred through the commission of willful or intentional crimes.  Under Littlefield's interpretation, liability incurred through the commission of unintentional crimes, including criminally negligent homicide, would not be excluded from coverage.[4]  Littlefield also

---

[4]It is undisputed that Littlefield did not intend either to collide with the other boat or to kill the victim as a result of a collision.  Under N.H. Rev. Stat. Ann. § 626:2(d) (2004), "A person acts negligently with respect to a material element of an offense" for the purposes of the criminal code, including section 630:3,

> when he fails to become aware of a substantial
> and unjustifiable risk that the material
> element exists or will result from his
> conduct.  The risk must be of such a nature
> and degree that his failure to become aware of

argued that enforcement of either the exclusion provision in Section B or Section G of the policy would leave so few claims actually covered as to render coverage under the policy illusory in contravention of public policy favoring compensation of innocent victims unintentionally harmed by an insured.

On May 11, 2004, the federal district court granted Acadia's motion for summary judgment and denied Littlefield's cross-motion for summary judgment, finding that coverage was excluded under the provision in Section B regarding "any loss, damage or liability willfully, intentionally or criminally caused or incurred by an insured person."  The court stated:

> It is well understood that negligence can be criminal when it results in death.  The policy does not limit the exclusion to intentional crimes and the mere fact that the phrase is grouped with exclusions for willfully and intentionally caused acts would not cause a reasonably informed insured to read a limitation into the exclusion that it does not contain.

Littlefield v. Acadia Ins. Co., No. 03-CV-220, 2004 U.S. Dist. LEXIS 8410, at *8-9 (D.N.H. May 11, 2004).  The court also rejected Littlefield's argument that the exclusion provision is

> it constitutes a gross deviation from the conduct that a reasonable person would observe in the situation.

Under New Hampshire state law, criminal negligence is measured against an objective standard. State v. Ebinger, 603 A.2d 924, 925 (N.H. 1992) ("Whether [a] defendant failed to become aware of a 'substantial and unjustifiable risk' is determined by an objective test, not by reference to the defendant's subjective perception.").

-6-

unenforceable as contrary to public policy.  The court did not reach the applicability or enforceability of the exclusion provision in Section G.[5]  Littlefield and Hartman appealed, and their cases were consolidated for purposes of appeal.[6]

## II.

We review a district court's grant of summary judgment de novo.  Rodriguez v. Smithkline Beecham, 224 F.3d 1, 5 (1st Cir. 2000).  Summary judgment is appropriate only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "Cross motions simply require us to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed."  Barnes v. Fleet Nat'l Bank, N.A., 370 F.3d 164, 170 (1st Cir. 2004) (internal quotation marks and citation omitted).  The parties contest only the interpretation of the yacht insurance

[5]We also do not reach the question of whether the provision in Section G is unambiguous and enforceable as applied to these facts.

[6]Littlefield also appealed from his criminal conviction on sufficiency of evidence as well as other grounds.  Oral argument was heard in the New Hampshire Supreme Court on October 13, 2004, and a decision is pending.  In the event that the New Hampshire Supreme Court grants a judgment of acquittal to Littlefield or remands for a new trial, the premise of the district court's ruling and ours will have changed.  Littlefield could then move for relief in the district court from the district court's judgment on the ground that "a prior judgment upon which it is based has been reversed or otherwise vacated."  See Fed. R. Civ. P. 60(b)(5).

policy's exclusion provisions. Whether there is any ambiguity in the exclusion provisions is a question of law for the court to determine. See Nieves v. Intercontinental Life Ins. Co. of P.R., 964 F.2d 60, 63 (1st Cir. 1992).

## A.        Choice of Law

We first identify the applicable law. The Acadia yacht policy contains a choice-of-law provision: "This Policy shall be governed by and construed under the general Maritime Law of the United States of America regardless of the venue or jurisdiction of the court or arbitration." The parties do not dispute the applicability of the choice-of-law provision, and federal maritime law is clearly applicable to the yacht policy at issue, Acadia Ins. Co. v. McNeil, 116 F.3d 599, 603 (1st Cir. 1997) . Even under federal maritime law, however, "[a] maritime contract's interpretation may so implicate local interests as to beckon interpretation by state law." Norfolk S. Ry. Co. v. Kirby, ____ U.S. ____, ____ (2004).

To determine whether application of state law is appropriate under federal maritime law, we must first inquire whether any federal statute governs the interpretation of the policy provision at issue in this case, and we find none. See Wilburn Boat Co. v. Fireman's Fund Ins. Co., 348 U.S. 310, 314, 321 (1955) ("Since Congress has not taken over regulation of marine insurance contracts . . . there is no possible question here of

-8-

conflict between a state law and any federal statute."). Next, we ask whether there is a specific, federal, judicially-created rule governing the interpretation of this policy, and we also find none. See, e.g., Commercial Union Ins. Co. v. Flagship Marine Servs., Inc., 190 F.3d 26, 30 (2d Cir. 1999) (finding "no specific federal rule governing construction of maritime insurance contracts"). Instead, we note that general principles of contract law are used to interpret marine insurance policies. See id.; see, e.g., Ingersoll Milling Mach. Co. v. M/V Bodena, 829 F.2d 293, 306 (2d Cir. 1987) (noting that the principle that an ambiguous insurance contract "will generally be construed against the insurer who drafted it in order to promote coverage for losses to which the policy relates . . . applies to all types of insurance policies[,] including maritime policies.") (citations omitted); Kalmbach, Inc. v. Ins. Co. of the State of Penn., 529 F.2d 552, 555 (9th Cir. 1976) ("[W]e can see no significant difference between construction of an ordinary insurance policy and one with marine insurance overtones. In general, each is to be construed against the insurance company."). Having discerned that there is no federal statute or federal rule governing the interpretation of the policy in this case, we lastly must inquire whether we should fashion such a rule, and conclude we should not. See Wilburn Boat Co., 348 U.S. at 314 (deciding, as Congress has, to leave the regulation of marine insurance with the states); McNeil, 116 F.3d at 603

(favoring application of state law over "the fashioning of new federal law" where no conflict between state law and any applicable federal statute is presented) (internal quotation marks and citation omitted).  Therefore, having found no federal statute or judicially-created rule governing the interpretation of maritime insurance policies, and concluding that we should not fashion any such rule, we look to the state law of New Hampshire, as do the parties in this case, to govern our interpretation.[7]

---

[7]The district court did not explicitly address either the parties' choice of federal maritime law as expressed in the insurance policy provision or its reasons for applying New Hampshire law as a consequence of the application of federal maritime law principles.  It simply stated: "I interpret the [yacht] policy using New Hampshire law," Littlefield, 2004 U.S. Dist. LEXIS 8410, at *5-6, and cited Acadia Ins. Co. v. McNeil, 116 F.3d 599 (1st Cir. 1997).  Nor do the parties specify their reasons for applying New Hampshire law.  Although the record in this case does not permit an exhaustive analysis of the contacts of the parties or the insurance policy with the state of New Hampshire, we are satisfied that the contacts that do appear in the record -- namely, the New Hampshire citizenship of the insured (Littlefield), and the storage and operation of the subject matter of the insurance contract (the yacht) in that state -- adequately support the application of New Hampshire law in this case.  See, e.g., Aqua-Marine Constructors, Inc. v. Banks, 110 F.3d 663, 674 (9th Cir. 1997) (citing factors listed in Restatement (Second) of Conflict of Laws § 188 (1971), including "the location of the subject matter of the contract" and "the domicil, residence, nationality, place of incorporation and place of business of the parties" as establishing sufficient contacts under federal maritime choice-of-law rules for applicability of a state's law in marine insurance contracts cases).  But see Albany Ins. Co. v. Anh Thi Kieu, 927 F.2d 882, 891 (5th Cir. 1991) (applicable state law under federal maritime choice-of-law rule includes law of state in which marine insurance policy was formed or law of state in which policy was issued and delivered).  See also Restatement (Second) of Conflict of Laws § 9 (1971) ("Limitations on Choice of Law": "A court may not apply the local law of its own state to determine a particular issue unless such application of this law would be

-10-

**B.        New Hampshire Rules of Construction**

In the absence of any New Hampshire court decision addressing the precise policy exclusion at issue, we resolve the question before us in light of New Hampshire state law governing the interpretation of insurance policies in general. See Coakley v. Me. Bonding and Cas. Co., 618 A.2d 777, 781 (N.H. 1992). Under that body of law, "the fundamental inquiry" in interpreting an insurance policy, as with other written contracts, "centers on determining the intent of the parties at the time of the agreement." Trombly v. Blue Cross/Blue Shield of N.H.-Vt., 423 A.2d 980, 984 (N.H. 1980). To this end, a court examining the language of an insurance policy must "take the plain and ordinary meaning of the policy's words in context[] and . . . construe the terms of the policy as would a reasonable person in the position of the insured based on more than a casual reading of the policy as a whole." Brouillard v. Prudential Prop. & Cas. Ins. Co., 693 A.2d 63, 66 (N.H. 1997) (internal quotation marks and citation omitted). Because insurance policies must be interpreted to protect the reasonable expectations of the policyholder, see A.J. Cameron Sod Farms, Inc. v. Cont'l Ins. Co., 700 A.2d 290, 292 (N.H. 1997), a court must inquire "whether the ordinary layman in the position of the insured could reasonably be expected to understand that certain

_____

reasonable in the light of the relationship of the state and of other states to the person, thing or occurrence involved.").

exclusions qualif[y] the policy's grant of coverage." N.H. Ins. Co. v. Schofield, 406 A.2d 715, 717 (N.H. 1979) (internal quotation marks and citations omitted).

If, under this standard, an insurance policy provision is susceptible to more than one reasonable interpretation, "and an interpretation provides coverage, the policy contains an ambiguity and will be construed against the insurer." Fed. Bake Shop v. Farmington Cas. Co., 736 A.2d 459, 460 (N.H. 1999); see also Contoocook Valley Sch. Dist. v. Graphic Arts Mut. Ins. Co., 788 A.2d 259, 261 (N.H. 2001) ("We will deem a policy term ambiguous as to coverage when the parties may reasonably differ about their interpretation and will construe the ambiguity in favor of the insured."). Interpretation of an ambiguity to favor the insured as against the insurer "is particularly applicable when ambiguities are found in an exclusionary clause." Id. (internal quotation marks and citation omitted). At the same time, while ambiguous terms may be construed to favor an insured, we may not find a term ambiguous merely because it eliminates coverage. See Funai v. Metro. Prop. & Cas. Co., 765 A.2d 689, 691 (N.H. 2000) ("While we construe insurance policies in favor of the insured when the policy is ambiguous, we will not force an ambiguity simply to resolve it against an insurance company.").

## C.        Application to the Yacht Policy

The Acadia yacht policy itself contains no definition of the word "criminally." Dictionary definitions, while not controlling, "are of some value . . . to the extent they inform us of the common understanding of terms." Hudson v. Farm Family Mut. Ins. Co., 697 A.2d 501, 503 (N.H. 1997); see Coakley, 618 A.2d at 786 (turning to dictionary "[t]o determine the plain and ordinary meaning of [a] word . . . as understood by a layperson of average intelligence"). The American Heritage Dictionary of the English Language (4th ed. 2000) defines the adjective "criminal" as, simply, "[o]f, involving, or having the nature of crime." "Crime," in turn, is defined as "[a]n act committed or omitted in violation of a law forbidding or commanding it and for which punishment is imposed upon conviction." Id. Whether or not a particular offense is a "crime" in common parlance thus depends on the existence of some legal duty or prohibition, not the mental state of the actor.[8]

The exclusion provision thus unambiguously excludes coverage for liability incurred by an insured person, such as Littlefield, through the commission of a crime for which he has been convicted -- here, a felony -- without regard to the requisite

---

[8]Nor does the New Hampshire Criminal Code distinguish among states of mind in defining "crime" for purposes of the Code. Rather, "[e]very offense is either a felony, misdemeanor or violation." N.H. Rev. Stat. Ann. § 625:9(II) (2004). "Felonies and misdemeanors are crimes," but "[a] violation does not constitute a crime." Id. § 625:9(II)(a), (b).

-13-

mental state of the crime.[9]  A reasonable layperson "in the position of the insured based on more than a casual reading of the policy as a whole," Brouillard, 693 A.2d at 66 (internal quotation marks and citation omitted), would understand that proposition. Because we can conceive of no other reasonable interpretation of the provision at issue, we find no ambiguity in the policy provision that warrants its being "construed against the insurer." Fed. Bake Shop, 736 A.2d at 460.

---

[9]We need not decide whether the exclusion provision would be ambiguous as applied to other facts, for example, where an insured cannot be convicted of a crime because of a lack of requisite criminal intent.  See, e.g., Allstate Ins. Co. v. Barron, 848 A.2d 1165 (Conn. 2004) (criminal acts exclusion inapplicable where insured could not be convicted based on lack of capacity to form culpable intent); Swift v. Fitchburg Mut. Ins. Co., 700 N.E.2d 288, 295 (Mass. App. Ct. 1998) (criminal acts exclusion inapplicable where insured was found not guilty because he lacked the capacity to form culpable intent).  "[T]he fact that 'terms of a policy of insurance may be construed as ambiguous where applied to one set of facts does not make them ambiguous as to other facts which come directly within the purview of such terms."  Allstate Ins. Co. v. Juniel, 931 P.2d 511, 514 (Colo. Ct. App. 1996) (citing Lee R. Russ, Couch on Insurance § 21.14 at 21-26 (3d ed. 1995)); see also Bank of the West v. Superior Court, 833 P.2d 545, 552 (Cal. 1992) ("[L]anguage in a contract must be construed in the context of that instrument as a whole, and in the circumstances of that case, and cannot be found to be ambiguous in the abstract.") (internal quotation marks, citation, and emphasis omitted); Youngwirth v. State Farm Mut. Auto. Ins. Co., 140 N.W.2d 881, 884 (Iowa 1966) ("ambiguity in an insurance policy is usually a relative term.  A single provision in such a policy may be ambiguous under one given factual situation, but clear and certain when applied to an entirely different set of facts.").  Here, Littlefield was convicted of a crime; he thus "come[s] directly within the purview" of the exclusion for "criminally caused" loss or liability. Juniel, 931 P.2d at 514.

Nevertheless, in an effort to find ambiguity in the policy exclusion for "willfully, intentionally or criminally caused or incurred" loss or liability, Littlefield first invokes the doctrine of ejusdem generis, which provides that "where general words follow an enumeration of persons or things, by words of a particular and specific meaning, such general words are not to be construed in their widest extent, but are to be held as applying only to persons or things of the same kind or class as those specifically mentioned." State v. Beckert, 741 A.2d 63, 65 (N.H. 1999) (quoting Black's Law Dictionary 517 (6th ed. 1990)). In Littlefield's view, the first two words in the list in the Section B exclusion provision, "willfully" and "intentionally," are "words of a particular and specific meaning" because they require a higher level of intent than negligence. By contrast, the word "criminally," which encompasses a broad spectrum of culpable states of mind, is a "general" word that should not "be construed in [its] widest extent, but [should] be held as applying only to" crimes "of the same kind or class" as the acts encompassed by the preceding two words. That is to say, "criminally" should be read as limited by the same high threshold of intent as the words "willfully" and "intentionally."

We do not agree. "Criminally," when read after the words "willfully" and "intentionally," is neither more general nor more specific than the two preceding words; it is merely different.

-15-

Each of the three terms is "general" in the sense that each encompasses a broad range of specific acts. There is some overlap in the conduct excluded by these general terms. However, "criminally" encompasses both unintentional and intentional crimes, while "willfully" and "intentionally" encompass both non-criminal and criminal acts. Only "criminally" includes unintentional acts committed with a criminally culpable state of mind. Criminal negligence is such an act under the New Hampshire Criminal Code. N.H. Rev. Stat. Ann. § 626:2(d) (2004). To read the word "criminally" to incorporate the limitations Littlefield seeks would render the word extraneous. Loss or liability caused through "intentional" crimes is already excluded as "intentionally" caused loss or liability. We decline to ignore the plain meaning of "criminally" in favor of a reading that would render the word superfluous. See Restatement (Second) of Contracts § 203(a) (1981) ("an interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect"); 2 Lee R. Russ, Couch on Insurance § 22:43 (3d ed. 1995) ("Since it must be assumed that each word contained in an insurance policy is intended to serve a purpose, every term will be given effect if that can be done by any reasonable construction."). More importantly, where a policy provision is unambiguous and the contracting parties' intent is thus clearly manifested in the plain language of that provision,

-16-

resort to canons of interpretation is simply unwarranted.  See Eric Mills Holmes & Mark S. Rhodes, Holmes's Appleman on Insurance § 5.1 (2d ed. 1996) (courts may not "resort to . . . aids of construction where contract language is unambiguous.  The intent of the parties and meaning of the contract are to be determined by the language alone.").

As a last-ditch effort, Littlefield urges us to adopt the reasoning and result of Young v. Brown, 658 So.2d 750 (La. Ct. App. 1995), in which a Louisiana appellate court interpreting a homeowner's liability insurance policy held that criminally caused injury must be at least intentional or willful in order to be excluded from coverage.  In that case, the insurance policy purported to exclude coverage for injury "which may reasonably be expected to result from the intentional or criminal acts of an insured person or which is in fact intended by an insured person." Id. at 752.  The Young court stated that,

> [n]estled between exclusions for injuries resulting from intentional acts and for intentionally inflicted injuries, a reasonable purchaser could have understood the basis of the exclusion to be intentional misconduct or intentional criminal acts, thereby allowing coverage for damages resulting from criminal negligence.

Id. at 754.

To the extent that the Young decision rests on a finding of ambiguity in the challenged exclusion provision, we believe that

-17-

case was wrongly decided.[10]  We are not alone.  A multitude of jurisdictions have reached a contrary result, finding as a matter of law that similar provisions unambiguously exclude loss or liability caused through the commission of a crime without regard to an insured's intent to act, much less to cause harm.  See, e.g., Hooper v. Allstate Ins. Co., 571 So.2d 1001, 1002-03 (Ala. 1990) (finding criminal acts exclusion clause unambiguous and noting that "[a] number of other jurisdictions have held that the same exclusion was unambiguous and excluded coverage for injuries resulting from criminal acts by the insured, regardless of whether the insured intended to commit the act or to cause the harm"); Am. Family Mut. Ins. Co. v. White, 65 P.3d 449, 452 & n.1 (Ariz. Ct. App. 2003) (finding that "the phrase 'any criminal law' plainly includes all criminal laws, not just those in which 'intent' is an essential element," and collecting fifteen cases from thirteen jurisdictions similarly finding on the facts before them, as contrasted with the sole outlier, Young v. Brown, 658 So.2d 750 (La. Ct. App. 1995)); Allstate Ins. Co. v. Peasley, 932 P.2d 1244, 1249 (Wash. 1997) ("As used in [policy] exclusionary clause, the

---

[10]The Young court implicitly based its determination that the provision was ambiguous on the fact that enforcing the provision as written would contravene "Louisiana's public policy that liability insurance should protect innocent accident victims from losses resulting from the negligent acts of an insured." Young, 658 So.2d at 754.  As we discuss below, we do not find enforcement of the exclusion provision in this case to be contrary to New Hampshire public policy even if enforced according to its clear and unambiguous terms.

-18-

phrase 'criminal acts' does not distinguish between intentional and unintentional crimes. The language is unambiguous, and it clearly encompasses [the] criminal act of reckless endangerment."). Accordingly, we reject Littlefield's attempts to inject ambiguity into the yacht policy's provision excluding coverage for "any loss, damage or liability willfully, intentionally or criminally caused or incurred by an insured person."

## III.

Littlefield asserts that enforcement of the exclusion provision in Section B, even if the provision is unambiguous, would render Acadia's promised coverage "illusory" in violation of New Hampshire public policy favoring compensation of innocent victims of an insured's unintentional acts. See Am. Policyholder's Ins. Co. v. Baker, 409 A.2d 1346, 1349 (N.H. 1979) ("[L]iability insurance is intended not only to indemnify the insured, but also to protect members of the public who may be injured through negligence."). In support of this claim, Littlefield points to a different New Hampshire criminal statute that renders "careless and negligent" operation of a power boat a misdemeanor and, therefore, a crime under the New Hampshire Criminal Code, regardless of the level of harm caused, as distinct from the statute under which he was convicted, which reaches only criminally negligent conduct that results in death. Compare N.H. Rev. Stat. Ann. § 270:29-a (2004) ("Careless and Negligent Operation of Boats") with N.H. Rev. Stat.

-19-

Ann. § 630:3 (2004) ("Negligent Homicide"). Littlefield asserts that _any_ negligent operation of a power boat could result in a criminal conviction under section 270:29-a, thereby triggering the exclusion provision for property damage or minor injuries -- that, is, for harms generally considered to be caused through civil negligence only. Exclusion of such a wide range of negligently caused loss or liability, he argues, would leave so few claims actually covered as to defeat the purpose of purchasing liability insurance in the first place.

We need not concern ourselves with factual scenarios not presented by this case. Littlefield was convicted of the felony of criminally negligent homicide, not the misdemeanor of carelessly operating a power boat. Nevertheless, even if his conviction had been for the lesser offense, proof of the requisite culpable mental state would still be required for a conviction under New Hampshire state law. Section 625:9(II) of the New Hampshire Criminal Code makes the Code's definitions of culpable mental states applicable to misdemeanors codified outside the Criminal Code, such as section 270:29-a (unless the non-criminal statute provides otherwise, which section 270:29-a does not). Criminally negligent operation of a power boat, therefore, like all criminal negligence under New Hampshire state law, requires at least a "fail[ure] to become aware of a substantial and unjustifiable risk" that "constitutes a gross

deviation from the conduct that a reasonable person would observe in the situation." N.H. Rev. Stat. Ann. § 626:2(d) (2004).

Moreover, as Acadia points out, even in the absence of a statutory requirement of intent, under New Hampshire state law, "a person cannot be convicted of a crime," including a misdemeanor, "without proof that the unlawful act was accompanied by a culpable mental state." State v. Goodwin, 671 A.2d 554, 555 (N.H. 1996). Negligent operation of a watercraft, in the absence of the requisite culpable mental state, could not be a crime and would not trigger the exclusion provision in Section B of the policy. Hence, criminal negligence differs from civil negligence under New Hampshire law in important ways,[11] and the yacht policy provides meaningful coverage for loss or liability incurred through the latter (as well as, Acadia notes, through "non-operational" negligence such as negligent maintenance).[12]

---

[11]Under New Hampshire law, civil liability for tortious negligence may be established where an actor is "in breach of an existing duty and create[s] a foreseeable risk of harm to someone to whom that duty is owed." Thibeault v. Campbell, 622 A.2d 212, 214 (N.H. 1993) (citation omitted).

[12]We note that numerous state courts have also held that enforcement of similar insurance policy provisions excluding coverage for criminally caused loss or liability does not violate the public policy of those states. See, e.g., Hooper, 571 So.2d at 1003 ("No public policy considerations dictate that an insurer must indemnify a third party for the criminal acts of an insured."); White, 65 P.3d at 454 & n.3 (enforcement of exclusion provision does not violate public policy; collecting cases); Juniel, 931 P.2d at 516 ("we perceive no violation of public policy because . . . the criminal act exclusion . . . merely excludes a reasonable subset of injuries -- those resulting from criminal acts").

As the district court noted, "[w]hile reasonable people can disagree about whether an insurance company should be permitted to offer insurance that fails to cover liability that results from criminally negligent conduct, the arguments supporting Littlefield's position are not so strong as to render the clause unenforceable."  Littlefield, 2004 U.S. Dist. LEXIS 8410, at *9 n.2.  We agree.[13]

## IV

Because we find that the insurance policy provision excluding coverage for "any loss, damage or liability willfully, intentionally or criminally caused or incurred by an insured person" is not ambiguous as applied to the undisputed facts of this case, and that its enforcement against Littlefield does not render coverage under the policy illusory, the district court's order granting summary judgment to Acadia and denying summary judgment to Littlefield is

**Affirmed.**

---

[13]We express no opinion about whether similar exclusions for criminal, yet unintentional, conduct in other, non-marine policies for liability insurance, such as in automobile insurance policies, would be violative of public policy or would render such coverage illusory.

-22-