ROLAND L. BELSOME, Judge.
 

 | Plaintiff-Appellant Gary McNamara appeals the grant of summary judgment in favor of Defendant-Appellee Essex Insurance Company. For the reasons that follow, we affirm.
 

 FACTS AND PROCEDURAL HISTORY
 

 Plaintiff-Appellant Gary McNamara (“Appellant”) contracted with Defendant-Appellee Augustino Brothers (“Augusti-no”) to repair roof damage that occurred as a result of Hurricane Katrina.
 
 [1]
 
 Defen-danL-Appellant Christopher Perdomo (“Perdomo”) was hired by Augustino to perform the repairs. Appellant alleges that Augustino hired itinerant workers to perform the repairs, and that these workers forcibly entered his home, stole priceless artifacts, family and historic memorabilia, and valuable possessions. Appellant filed suit on September 1, 2006, alleging that Augustino and Perdomo failed to properly hire and supervise the itinerant workers, and seeking damages stemming from breach of contract, fraud, trespass, uncompensated use of premises, theft, negligent infliction of emotional distress and mental anguish, racketeering, and seeking attorney’s fees and costs.
 

 | gEssex Insurance Company (“Essex”), Augustino’s surplus lines commercial general liability insurer, intervened as a defendant, and filed a motion for summary judgment, asserting policy exclusions for intentional acts, criminal acts, and breach of contract. The trial court granted Essex’s motion for summary judgment on August 7, 2008. This appeal followed.
 

 STANDARD OF REVIEW
 

 “A summary judgment is reviewed on appeal
 
 de novo,
 
 with the appellate court using the same criteria that govern the trial court’s determination of whether summary judgment is appropriate; i.e., whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law of law.”
 
 Samaba v. Rau,
 
 2007-1726, pp. 3-4 (La.2/26/08), 977 So.2d 880, 882-83.
 

 DISCUSSION
 

 On appeal, Appellant assigns two errors for review: 1.) Appellant submits that Essex’s policy exclusions did not unambiguously exclude or exclude as a matter of law liability for Augustino and Perdomo’s negligence; and 2.) Appellant submits that Augustino, the named insured, and Perdo-mo were not participants in the criminal activity, but are nevertheless vicariously liable as employer and principal.
 

 Assignment of Error # 1
 

 Criminal Acts Exclusion
 

 Essex submits that the Criminal Acts Exclusion in the Combination General Endorsement, M/E-OOl (01/05), precludes coverage in this instance because it provides no coverage for “property damage ... or any injury, loss or damages | including consequential injury ... arising from criminal acts from any insured, and employee of any insured or anyone from which you may be held liable....”
 
 [2]
 
 Essex
 
 *739
 
 maintains that this language is narrow, clear, and unambiguous. Moreover, Essex argues that similar exclusions in other jurisdictions have been held as not against public policy,
 
 [3]
 
 as it would violate public policy to allow an insured to be indemnified for his own intentional criminal acts. Finally, Essex argues that it is permitted to limit its liability in any manner that does not conflict with any statutes or violate public policy.
 

 Appellant argues that the Criminal Acts Exclusion is unenforceable because it is overly broad, ambiguous, and against public policy. Specifically, Appellant submits that the Essex policy is ambiguous because it does not define what constitutes a criminal act, and that it is public policy to allow innocent victims of criminal acts to be compensated by liability insurance. Appellant also argues that it is undisputed that neither Augustino nor Perdomo participated in the thefts, and therefore, the Criminal Acts Exclusion does not apply to Augustino or Perdomo.
 

 In support of his argument that the language is overly broad, Appellant cites
 
 Young v. Brown,
 
 27-018 (La.App. 2 Cir. 6/21/95), 658 So.2d 750. In
 
 Young,
 
 the plaintiff was negligently injured after defendant Brown’s gun accidentally discharged; Brown subsequently pled guilty to negligent injuring.
 
 Young,
 
 p. 6, 658 So.2d at 753. The court reversed the trial court’s grant of summary judgment, finding that the policy exclusion regarding damages from an insured’s criminal |4acts was ambiguous
 
 [4]
 
 because it potentially encompassed non-intentional criminally negligent behavior:
 

 The term “criminal acts,” as used in the coverage exclusion is susceptible of more than one meaning. Allstate reads the term to mean any action that results in a criminal charge. An insured, however, could justifiably conclude otherwise. Nestled between exclusions for injuries resulting from intentional acts and for intentionally inflicted injuries, a reasonable purchaser could have understood the basis of the exclusion to be intentional misconduct or intentional criminal acts, thereby allowing coverage for damages resulting from criminal negligence. An exclusion for negligent acts, albeit criminally negligent acts, is thus counter-intuitive to the wording of the exclusion and serves to circumvent the very purpose for which liability insurance is purchased. Such an exclusion is likewise contrary to Louisiana’s public policy that liability insurance should protect innocent accident victims from losses resulting from the negligent acts of an insured.
 

 Young,
 
 p. 7, 658 So.2d at 754. In finding that the language “criminal acts” in the policy was ambiguous, the court stated:
 

 
 *740
 
 The term “criminal acts” is equivocal and susceptible of more than one interpretation based upon its usage and the tenor of the exclusionary language. A reasonable liability insurance buyer could construe the instant exclusion to deny coverage only for intentional criminal acts, thereby allowing coverage for damages arising out of non-intentional, criminal negligence. In light of this ambiguity, we construe the policy to provide coverage for damages arising from non-intentional acts that may rise to the level of criminal negligence. Such an interpretation recognizes the insured’s reasonable expectations of coverage while voiding the exclusion only to the extent that it violates public policy.
 

 Id.,
 
 p. 8, 658 So.2d at 754-55. Thus, while the court found “criminal acts” to be susceptible of differing interpretations, the court also determined that a reasonable [¿insurance buyer could construe the language as denying coverage for only intentional criminal acts.
 
 Id.
 

 Essex distinguishes
 
 Young
 
 by asserting that
 
 Young
 
 involved a claim for criminal negligence, whereas the instant case involves criminal conduct. Furthermore, Essex argues, the policy is not ambiguous or overly broad, as it plainly covers negligent acts, but not criminal acts. Moreover, Essex notes that the policy examined in
 
 Young
 
 was a homeowner’s policy, while the policy in the instant case is a surplus lines commercial general liability policy. Essex further submits that
 
 Allstate Insurance Company v. Peasley
 
 found that although the language “criminal acts” did not differentiate between intentional and non-intentional crimes, it was not ambiguous, as it “clearly eneompass[ed][the] criminal act of reckless endangerment.”
 
 Allstate Ins. Co. v. Peasley,
 
 131 Wash.2d 420, 429, 932 P.2d 1244, 1249 (1997).
 
 [5]
 
 Likewise, Essex maintains, although “criminal acts” is not defined in the policy at issue, it plainly precludes coverage for unlawful entry and theft of property.
 

 It is well-settled in Louisiana jurisprudence that clear and unambiguous language limiting liability in insurance contracts should be enforced as written, provided that the language is not overly broad or against public policy.
 
 See, e.g., Efferson v. Kaiser Aluminum & Chemical Corp.,
 
 816 F.Supp. 1103 (E.D.La.1993). Similarly, “[t]he words of a contract must be given their generally prevailing meaning.” La. Civ.Code art. 2047. Any ambiguities are to be construed against the insurer:
 

 Ambiguous policy provisions generally are to be construed against the insurer and in favor of coverage.
 
 [Louisiana Ins. Guar. Ass’n v. |6 Interstate Fire & Casualty Co.,
 
 93-0911 (La.1/14/94), 630 So.2d 759, 763.] Under this rule of strict construction, equivocal provisions seeking to narrow an insurer’s obligation are strictly construed against the insurer.
 
 Garcia v. St. Bernard Parish School Board,
 
 576 So.2d 975, 976 (La.1991). That strict construction principle, however, is subject to exceptions. One of these exceptions is that the strict construction rule applies only if the ambiguous policy provision is susceptible to two or more reasonable interpretations; for the rule of strict construction to apply, the insurance policy must be not only susceptible to two or more interpretations, but each of the alternative interpretations must be reasonable.
 
 Inter
 
 
 *741
 

 state Fire,
 
 630 So.2d at 770;
 
 Garcia,
 
 576 So.2d at 976.
 

 Carrier v. Reliance Ins. Co.,
 
 99-2573, p. 12 (La.4/11/00), 759 So.2d 37, 43-44.
 

 As the court noted in
 
 Young,
 
 we find that a reasonable insurance buyer would interpret the Criminal Acts Exclusion in the Essex policy as excluding the defendant-employees’ alleged criminal acts. While we recognize that issues regarding criminal acts exclusions in other jurisdictions have been raised,
 
 [6]
 
 under these particular facts and circumstances, we cannot say that the policy language is overly broad or ambiguous.
 

 As the Louisiana Supreme Court noted in
 
 Louisiana Ins. Guar. Ass’n v. Interstate Fire & Casualty Co.,
 
 93-0911 (La.1/14/94), 630 So.2d 759, 763:
 

 An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an 17absurd conclusion.
 
 Lindsey v. Poole,
 
 579 So.2d 1145, 1147 (La.App.2d Cir.),
 
 writ denied,
 
 588 So.2d 100 (La.1991) (citing
 
 Zurich Ins. Co. v. Bouler,
 
 198 So.2d 129 (La.App. 1st Cir.1967));
 
 Harvey v. Mr. Lynn’s, Inc.,
 
 416 So.2d 960, 962 (La.App.2d Cir.1982) (collecting cases);
 
 Jefferson v. Monumental
 

 General Ins. Co.,
 
 577 So.2d 1184, 1187 (La.App. 2d Cir.1991). Absent a conflict with statutory provisions or public policy, insurers, like other individuals, are entitled to limit their liability and to impose and to enforce reasonable conditions upon the policy obligations they contractually assume.
 
 Oceanonics, Inc. v. Petroleum Distributing Co.,
 
 292 So.2d 190, 192 (La.1974);
 
 Fruge v. First Continental Life and Accident Ins. Co.,
 
 430 So.2d 1072, 1077 (La.App. 4th Cir.),
 
 writ denied,
 
 438 So.2d 573 (La.1983) (collecting cases);
 
 Hartford Acc. & Indem. Co. v. Joe Dean Contractors, Inc.,
 
 584 So.2d 1226,1229 (La.App. 2d Cir.1991) (collecting cases).
 

 Because it is against public policy in Louisiana to permit an insured to be indemnified for the insured’s own intentional criminal acts, we find that the Criminal Acts Exclusion in this case does not violate public policy.
 
 See Young,
 
 p. 5, 658 So.2d at 753 (“We have already recognized the strong public policy that prevents wrongdoers from indemnifying themselves against their own intentional criminal acts.”). Finally, we find that the language in the Essex policy excluding coverage for damages arising out of criminal acts “from any Insured, any employee of any insured or anyone for whom you may be held
 
 *742
 
 liable” precludes coverage for Augustino and Perdomo under these facts and circumstances, as the alleged damages arose out of the defendant-employees’ criminal acts. Accordingly, contrary to Appellant’s argument, the Criminal Acts Exclusion also applies to Augustino and Perdomo.
 

 Assignment of Error # 2
 

 In the second assignment of error, Appellant argues that although neither Au-gustino nor Perdomo participated in the thefts, Augustino and Perdomo are vicariously liable for the defendant-employees’ acts pursuant to La. C.C. art. 2320. | sAppellant further urges that all defendants are insureds under the Essex policy; thus, as innocent co-insureds of the defendant-employees, Augustino and Perdomo are not precluded from coverage. Appellant cites
 
 Obson v. National Union Fire Ins. Co.,
 
 93-1975 (La.2/28/94), 632 So.2d 1158, where the Louisiana Supreme Court held that a spouse and innocent co-insured of her husband, who intentionally set fire and destroyed their home and contents, was not barred from recovering under a fire policy.
 

 Essex maintains that the defendant-employees are not insureds under the policy, as they were clearly not performing duties within the scope of their employment or performing duties related to the conduct of Augustino’s business when forcibly entering Appellant’s home and committing theft. In “Section II — WHO IS AN INSURED”, the policy provides that in addition to insureds designated in the declarations (emphasis added):
 

 2. Each of the following is also an insured:
 

 a. Your “volunteer workers” only while performing duties related to the conduct of your business, or your “employees”, other than either your “executive officers” ... but only for acts within the scope of their employment by your or while performing duties related to the conduct of your business. However, none of these “employees” or “volunteer workers” are insureds for:
 

 [[Image here]]
 

 (2) “Property Damage” to property:
 

 (a) Owned, occupied or used by,
 

 (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by
 

 you, any of your “employees”, “volunteer workers”....
 

 Essex further argues that the defendant-employees are not insureds because they were temporary workers, and as such, not considered “employees” as defined in the Essex policy, thereby precluding coverage for their criminal acts. Essex Rpoints to the policy provision in Section V — Definitions, which states that “Employee” does not include a “temporary worker”, and subsequently defines “temporary worker” as follows:
 

 “Temporary Worker” means a person who is furnished to you to substitute for a permanent “employee” on leave or to meet seasonal or short-term workload conditions.
 

 Essex argues that in addition to the Criminal Acts Exclusion, the Breach of Contract Endorsement also precludes coverage in this case. The Breach of Contract exclusion states:
 

 This insurance does not apply to claims for breach of contract, whether express or oral, nor claims for breach of an implied in law or implied in fact contract, whether “bodily injury,” “property damage,” “advertising injury,” “personal injury” or an “occurrence” or damages of any type is alleged; this exclusion
 
 *743
 
 also applies to any additional insureds under this policy.
 

 Furthermore, no obligation to defend will arise or be provided by us for such excluded claims.
 

 Appellant argues that the exclusion is inapplicable because there was no assertion that Augustino’s work was defective, only that Augustino and Perdomo were negligent in causing damages to Appellant. Essex maintains that this argument lacks merit because the Breach of Contract Exclusion applies to both intentional and negligent breaches of contract; Appellant’s alleged damages arose from a negligent breach of contract and from alleged criminal acts.
 

 With respect to Appellant’s argument that Augustino and Perdomo are vicariously liable, Essex highlights the Negligent Hiring and Supervision Exclusion of the Combination General Endorsement, which provides, in pertinent part (emphasis added):
 

 |in10. This insurance does not apply to ‘bodily injury’, ‘property damage’, ‘personal injury5, ‘advertising injury’ or any injury, loss, or damages, including consequential injury, loss or damage, arising out of, caused by or contributed to:
 

 [[Image here]]
 

 e. as a result of alleged negligence or other wrongdoing in the hiring, training, placement, supervision, or monitoring of others by the insured. ...
 

 Appellant maintains, however, that this exclusion is inapplicable because negligent infliction of emotional distress is alleged, and therefore, the policy should cover any other alleged acts of negligence.
 

 We find that under either scenario, the defendant-employees were not insureds under the Essex policy. Even if the defendant-employees were not “Temporary Workers,” we cannot reasonably find that the defendant-employees were acting within the course and scope of their employment when forcibly entering Appellant’s home and committing the thefts.
 
 [7]
 
 Additionally, the language of the Breach of Contract Exclusion in this case also operates to bar coverage for any negligent breaches of contract by Augustino and/or Perdomo, as the policy language does not provide, as Appellant alleges, that the breach of contract must be asserted for defective workmanship in order to be applicable.
 

 
 *744
 
 Moreover, the plain language of the Negligent Hiring and Supervision Exclusion, in addition to the “anyone from which you may be held liable” language within the Criminal Acts Exclusion, precludes coverage for Augustino [^and/or Perdomo under Appellant’s theory of vicarious liability. Therefore, we find that Appellant’s vicarious liability argument must fail under these particular facts and circumstances. CONCLUSION
 

 For the aforementioned reasons, the trial court’s judgment is affirmed.
 

 AFFIRMED.
 

 [1]
 

 . Hurricane Katrina struck the Louisiana coast on August 29, 2005.
 

 [2]
 

 . The policy provision regarding the Criminal Acts Exclusion reads in full:
 

 
 *739
 
 10. This insurance does not apply to 'bodily injury', 'property damage', 'personal injury’, ‘advertising injury’ or any injury, loss, or damage including consequential injury, loss or damage arising out of, caused by or contributed to:
 

 [[Image here]]
 

 m. from criminal acts, fraudulent, dishonest or malicious acts or omissions from any Insured, any employee of any insured or anyone for whom you may be held liable; ....
 

 [3]
 

 . Essex cites
 
 Hooper v. Allstate Ins. Co.,
 
 571 So.2d 1001 (Ala.1990) and
 
 Am. Family Mut. Ins. Co. v. White,
 
 204 Ariz. 500, 65 P.3d 449 (Ariz.Ct.App.2003).
 

 [4]
 

 . The criminal acts exclusion at issue in
 
 Young
 
 read as follows:
 

 We do not cover any bodily injury or property damage which may reasonably be expected to result from the intentional or criminal acts of an insured person or which is in fact intended by an insured person.
 

 Young,
 
 p. 3, 658 So.2d at 752.
 

 [5]
 

 . In
 
 Allstate Ins. Co. v. Peasley
 
 131 Wash.2d at 423, 932 P.2d 1244, plaintiff Allstate sought a declaration that its criminal acts exclusion precluded coverage to a houseguest who was
 
 shot
 
 by the homeowner. The shooting constituted the crime of reckless endangerment.
 
 Id.
 

 [6]
 

 . It is also noteworthy that we question the reach of some criminal acts exclusions. We are aware that the unfettered application of criminal acts exclusions may mean that insurance companies can avoid their obligations under their policies whenever an insured also violates a criminal statute. Insurance companies are now writing their criminal acts exclusions very broadly to exclude any injury resulting from a criminal act, regardless of the type of criminal act and whether the injury was reasonably expected to occur. While it is true that public policy disfavors insuring for certain injuries stemming from certain criminal acts, it surely does not prohibit coverage for all injuries resulting from any criminal act. Of course, public policy does not, for example, prohibit insurance coverage for unexpected injuries stemming from minor traffic offenses or crimes based upon only negligent acts. We find that the following quote best illustrates this problem: " '[i]f the maxim, that no man shall profit from his own wrong [or criminal act], be applied liberally, then the slightest negligence [or most minor offense] * * * would bar recovery. Such a result would be recognized generally as impractical and unjust.’ ”
 

 Allstate Ins. Co. v. Cartwright,
 
 (Ohio App. 2 Dist.) 1997 WL 368370, *4 (unpub.Xquoting
 
 Three Sons, Inc. v. Phoenix Ins. Co.,
 
 257 N.E.2d 774, 357 Mass. 271)(1970).
 

 [7]
 

 . Appellant argues that
 
 LeBrane
 
 v.
 
 Lewis,
 
 292 So.2d 216 (La.1974) applies to the facts of this case. In
 
 LeBrane,
 
 plaintiff LeBrane arrived late for his job as a kitchen helper at a hotel, and his immediate supervisor, Lewis, instructed him to take the day off and cut his hair; however, LeBrane refused to leave the premises.
 
 LeBrane,
 
 292 So.2d at 217. Lewis, who had the authority to terminate employees, fired LeBrane and advised him to sign a termination slip.
 
 Id.
 
 Shortly thereafter, the two began to argue, and took the argument to the loading premises at the basement of the hotel.
 
 Id.
 
 Lewis ultimately stabbed LeBrane in the loading premises area.
 
 Id.
 
 The Louisiana Supreme Court held that the tortious conduct was in the course and scope of Lewis' employment because the tortious conduct occurred "while the employee was at least partly actuated by his purpose of acting for his employer in the discharge of the recalcitrant co-employee ... and it was reasonably consequent upon or incident to his performance of his employment function of hiring and firing sub-employees.”
 
 Id.
 
 at 219. We find
 
 LeBrane
 
 distinguishable from the facts of the case
 
 sub judice,
 
 as the defendant-employees’ criminal acts were not reasonably consequent upon or incident to their duties in repairing Appellant's roof; Appellant was not a co-employee. Accordingly, the defendant-employees’ forcible entry and theft cannot reasonably be designated as “primarily employment-rooted” under these particular facts and circumstances.
 
 See Id.
 
 at 218.