STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

CA 12-761

AARON PROVOST, ET UX.

VERSUS

HOMES BY LAWRENCE & PAULINE, INC., ET AL.

**********

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 06-C-3132-A
HONORABLE JAMES P. DOHERTY, JR., DISTRICT JUDGE

**********

**ELIZABETH A. PICKETT**
**JUDGE**

**********

Court composed of Marc T. Amy, Elizabeth A. Pickett, and Billy Howard Ezell, Judges.

**AFFIRMED.**

William L. Melancon, P.E.
Melancon & Associates, LLC
520 Roosevelt St.
Lafayette, Louisiana 70503
(337) 233-8600
COUNSEL FOR PLAINTIFFS/APPELLANTS:
    Aaron Provost
    Holly Provost

**James A. Prather**
**Mark E. Seamster**
**Galloway, Johnson, Tomkins, Burr & Smith**
**3 Sanctuary Blvd., 3rd Floor**
**Mandeville, Louisiana 70471**
**(985) 674-6680**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **American Vehicle Insurance Company**

**Richard Todd Musgrave**
**Ethan N. Penn**
**Musgrave, McLachlan & Penn**
**1515 Poydras St., #2380**
**New Orleans, LA 70112**
**(504) 799-4300**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Homes By Lawrence & Pauline, Inc.**

**Lawrence J. Stoute**
**In Proper Person**
**211 Bayonne**
**Lafayette, LA 70502**

**PICKETT, Judge.**

Homeowners appeal the trial court's dismissal of their claims against insurer that issued a commercial general liability policy to contractor that built their home. For the following reasons, we affirm.

**FACTS**

In May 2004, Aaron and Holly Provost contracted with Homes by Lawrence & Pauline, Inc. (HLP) to build their home near Washington, Louisiana. HLP delivered the home to the Provosts in June 2005. Soon after taking possession of their home, the Provosts observed several manifestations of defects and contacted HLP to investigate and correct the defects. HLP sent workers to attempt to repair some of the defects, but most of those attempts were unsuccessful. The Provosts filed suit, asserting their claims for defects in design, defects in materials supplied by HLP, and/or poor workmanship performed by HLP were governed by the New Home Warranty Act (NHWA).

As part of its business operations, HLP purchased a commercial general liability (CGL) insurance policy from American Vehicle Insurance Company (AVIC) for the term October 1, 2004 through October 1, 2005. After being sued, HLP demanded that AVIC defend it in this litigation.

AVIC initially provided HLP a defense but filed a motion for summary judgment prior to trial, asserting that its policy did not provide coverage for the Provosts' claims and that it was no longer obligated to provide a defense. Specifically, AVIC asserted: (1) its policy provides no coverage for an insured's breach of contract, no coverage for an insured's poor workmanship, and no coverage for damage resulting from mold, water, or moisture and (2) the evidence in this matter shows that one or more of these policy exclusions negates coverage for all of the Provosts' claims.

After a hearing, the trial court granted AVIC's motion and dismissed the Provosts' claims against it. The Provosts appealed.

## DISCUSSION

### *Summary Judgment and Insurance Contracts*

Appellate courts review summary judgments de novo, using the same criteria applied by the trial courts to determine whether summary judgment is appropriate. *Greemon v. City of Bossier City*, 10-2828, 11-39 (La. 7/1/11), 65 So.3d 1263. A motion for summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(B).

Generally, interpretation of an insurance contract concerns a legal question that can be resolved in the framework of a motion for summary judgment. *Cutsinger v. Redfern*, 08-2607 (La. 5/22/09), 12 So.3d 945. Insurance policies are interpreted according to the general rules of contract interpretation, and liability insurance policies are interpreted to provide coverage rather than deny coverage. *Supreme Servs. & Specialty Co., Inc. v. Sonny Greer, Inc.*, 06-1827 (La. 5/22/07), 958 So.2d 634. Notwithstanding, insurers can limit their liability by imposing "reasonable conditions or limitations upon their insureds." *Id.* at 638-39. "[U]nambiguous provisions limiting liability must be given effect"; however, the insurer must prove "a loss falls within a policy exclusion." *Id.* at 639.

### *Does AVIC's Policy Provide Coverage for the Provosts' Claims?*

#### *Breach of Contract Exclusion*

In support of its Motion for Summary Judgment, AVIC asserts that the plain language of its policy exclusions for breach of contract and fungus specifically

excludes coverage for the Provosts' claims against it. AVIC's breach of contract exclusion provides:

> This insurance does not apply and no duty to defend is provided by us for "bodily injury", "property damage", "personal injury" and "advertising injury" for claims, "suits", accusations, charges or any loss, costs or expense, whether express or oral, for breach of contract, breach of an implied in law or implied in fact contract. This exclusion also applies to any additional insured under this policy.

AVIC cites *Everett v. Philibert*, 08-2270 (La.App. 1 Cir. 5/8/09), 13 So.3d 616, and *McNamara v. Augustino Brothers, Inc.*, 08-1522 (La.App. 4 Cir. 5/13/09), 13 So.3d 736, *writ denied*, 09-1326 (La. 9/25/09), 18 So.3d 71, in support of its contention. In those cases, the courts held that the plaintiffs' claims for construction defects and/or poor workmanship against building contractors were excluded from CGL coverage by the applicable insurance policies' breach of contract exclusions.

As the Provosts argue here, the plaintiffs in *Everett*, 13 So.3d 616, asserted that some of their claims arose in tort because the insured negligently performed a contractual obligation owed to them. Therefore, the plaintiffs argued their "tort" claims were not subject to the breach of contract exclusion asserted by the insurer. The first circuit explained, however, that in such situations, the negligence claims asserted must be "separate and distinct and not arising from the breach of contract claim. Particularly, the tort claim[s] must arise from a duty other than the one imposed by the contract." *Id.* at 620 (citation omitted). The court observed that such an exception existed in *In re St. Louis Encephalitis Outbreak in Ouachita Parish No. 01-4224 All Cases*, 41,250-41,259 (La.App. 2 Cir. 9/1/06), 939 So.2d 563, *writ denied*, 06-2527 (La. 12/15/06), 945 So.2d 694, because there the plaintiffs alleged the defendant breached a contractual duty to them and also breached a general duty it owed to all persons. In *Everett*, the court concluded that

3

while the plaintiffs urged that some of their claims arose from a general duty to all persons, they failed to show the defendant breached a general duty. The court also observed that the plaintiffs alleged only breaches of contract against the defendants and, therefore, held that the breach of contract exclusion excluded their claims. In *McNamara,* the court held that there was no coverage under the CGL policy for two reasons, one being the policy barred "coverage for any negligent breaches of contract" by the insured. *McNamara*, 13 So.3d at 743.

Lawrence Stoute, a principal of HLP, testified that all the duties HLP owed to the Provosts arose from their contract. The Provosts have not shown otherwise that their claims arose from a general duty owed by HLP to all persons. Pointing to the NHWA, they argue the exclusion is in dereliction of public policy. We do not agree. The stated purpose of the NHWA is "to promote commerce in Louisiana by providing clear, concise, and mandatory warranties for the purchasers and occupants of new homes in Louisiana and by providing for the use of *homeowners' insurance* as additional protection for the public against defects in the construction of new homes." La.R.S. 9:3141 (emphasis added). This stated purpose shows the legislature sought to provide homeowners additional protection through homeowners' insurance, not CGL insurance, as argued by the Provosts. Moreover, Louisiana jurisprudence holds that CGL policies are "not written to guarantee the quality of the insured's work or product." *Supreme Servs.*, 958 So.2d at 641. Accordingly, the Provosts have not shown their claims are not subject to AVIC's breach of contract exclusion.

**"Work Product" Exclusion versus "Products-Completed Operations Hazard" Coverage**

AVIC further argues its policy does not provide coverage for the Provosts' claims of poor workmanship, but the Provosts contend that summary judgment in

4

favor of AVIC negates the "products-completed operations hazard" (PCOH) coverage HLP purchased from AVIC. They argue AVIC took a fee from HLP for PCOH coverage but provided nothing in return.

AVIC's policy contains the following exclusions common to CGL policies:

> j. Damage to Property
> [The policy does not cover] "Property damage" to:
>
> . . . .
>
> (5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or
>
> (6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.
>
> . . . .
>
> Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".
>
> k. Damage to Your Product
> [The policy does not cover]
>
> "Property damage" to "your product" arising out of it or any part of it.
>
> 1. Damage to Your Work
> [The policy does not cover]
>
> "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".
>
> This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.
>
> m. Damage to Impaired Property or Property Not Physically Injured
>
> "Property damage" to "impaired property" or property that has not been physically injured, arising out of:
>
> 1. A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

5

2. A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

In *McMath Construction Company, Inc. v. Dupuy*, 03-1413 (La.App. 1 Cir. 11/17/04), 897 So.2d 677, *writ denied*, 04-3085 (La. 2/18/05), 896 So.2d 40, the court explained that exclusions k and l, jointly referred to as the "work product" exclusions, eliminate coverage for property damage to the insured's product arising out of the product and eliminates coverage for property damage to the insured's work "arising out of it or any part of it and included in the products-completed operations hazard." *Id.* at 682. The supreme court confirmed this conclusion and stated that the "work product" exclusions "reflect the insurance company's intent to 'avoid the possibility that coverage under a CGL policy will be used to repair and replace the insured's defective products and faulty workmanship'." *Supreme Servs.*, 958 So.2d at 641 (quoting WILLIAM SHELBY MCKENZIE & H. ALSTON JOHNSON, III, 15 INSURANCE LAW and PRACTICE, § 195, p. 555 (3rd Ed.2006)).

The Provosts argue their claims fall within the PCOH provision; therefore, AVIC's policy provides coverage for their claims. The PCOH provision in AVIC's policy states:

14.a. "Products-completed operations hazard" includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned.

. . . .

AVIC's policy defines "your product" and "your work" as follows:

17. "Your product" means:

a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

6

(1) You;

. . . .

19. "Your work" means:

a. Work or operations performed by you or on your behalf; and

b. Material, parts or equipment furnished in connection with such work or operations.

The Provosts argue the "work product" exclusion does not apply because HLP used subcontractors to perform all the work on their home, and exclusion l does not apply to HLP's work if the damaged work or work out of which the damage arises was performed by subcontractors. In *Supreme Services*, 958 So.2d at 645, the supreme court clarified the coverage provided by the PCOH provision:

> Under the "work product" exclusion, the insured or its subcontractor becomes liable for damages to its work or its product caused by its faulty workmanship. Under the PCOH provision, damages, other than the faulty product or work itself, arising out of the faulty workmanship are covered by the policy. Stated differently, if a subcontractor's faulty electrical work caused the building to burn down before completion, the "work product" exclusion would eliminate coverage for the faulty electrical work performed by the contractor or subcontractor. However, the operations hazard coverage applies not to the faulty work, but damages arising out of the faulty work. Damage to real property arising out of the faulty work (fire damage) would not be excluded as it would be covered under the PCOH provision. The case *sub judice* involves a claim for damages to the work product itself, i.e. the cracked concrete slab, not a claim arising out of the work and covered by the PCOH provision. Thus, the exception for the work performed on the insured's behalf by a subcontractor under the PCOH damage section of the policy simply is inapplicable to the present case. In other words, the PCOH provision only applies to those injuries which might occur as a result of the damaged product. In the instant case, there is no need to delineate the PCOH provision because there is no other product damaged or third person injured. Here, the only applicable provision is the "work product" exclusion, which applies to work performed by Greer or on its behalf by subcontractors.

The situation addressed above is the issue presented here. The PCOH provision does not apply to the Provosts' claims for damages because their claims are for HLP's product itself. *See also, Stewart Interior Contractors, L.L.C. v.*

*Metalpro Indus., L.L.C.*, 07-251 (La.App. 4 Cir. 10/10/07), 969 So.2d 653; *Calcasieu Parish School Bd v. Lewing Constr. Co., Inc.*, 05-928 (La.App. 3 Cir. 12/12/07), 971 So.2d 1275.

AVIC has shown that the breach of contract exclusion and the "work product" exclusion apply to the Provosts' claims. The Provosts have failed to show a genuine issue of material fact exists as to whether AVIC's breach of contract exclusion applies to their claims and as to whether the PCOH provision provides coverage for their claims. Accordingly, AVIC has established that it is entitled to judgment dismissing the Provosts' claims against it.

## DISPOSITION

The judgment of the trial court dismissing the Provosts' claims against American Vehicle Insurance Company is affirmed. All costs of this appeal are assigned to the Provosts.

**AFFIRMED.**