LOLLEY, J.
 

 | T Plaintiff, Latasha Potts, appeals a judgment of the Ruston City Court, Parish of Lincoln, State of Louisiana, in favor of Safeway Insurance Company of Louisiana (“Safeway”), which dismissed her claims, as well as the claims of Loretta Goldsmith. For the following reasons, we reverse the trial court’s judgment and remand the case to the trial court for further proceedings.
 

 Facts
 

 This case arises out of an automobile accident that occurred on July 19, 2006, in Ruston, Louisiana. Shedrick Green and Thaddeus Slaton were involved in an ongoing feud. Green was driving a vehicle, owned by Melodynee Pringle, west on West Vaughn Street in Ruston, following Slaton’s vehicle. Green passed Slaton’s vehicle while brandishing and pointing a gun at Slaton. When Slaton saw the gun, he slowed down and turned into a parking lot at Arlington Park. Then, Green stopped the vehicle he was driving, got out of the vehicle, fired his gun at Slaton, got back into the vehicle and continued driving.
 
 [1]
 

 At approximately the same time, Potts was driving a vehicle, owned by Asalyn Goldsmith, with Loretta Goldsmith and others as passengers in the vehicle. The vehicle Potts was driving was traveling South on Arlington Street approaching the intersection with Vaughn Street. Green proceeded through the stop sign at the intersection without stopping and the vehicles collided. After the collision, Green continued driving and then pulled into |2an empty lot and attempted to flee on foot. Green fired his weapon again and shot himself in the hand.
 

 Goldsmith and Potts each filed suit against Green and Safeway, as insurer of the vehicle. Safeway had issued a policy
 
 *640
 
 of automobile liability insurance to Melo-dynee Pringle, the owner of the vehicle Green was operating. The separate proceedings were consolidated at the trial court. Safeway denied coverage for Green in this accident, and the case was tried on September 22, 2009. Subsequently, the trial court issued an opinion in favor of Safeway and against Goldsmith and Potts, dismissing their claims, and one judgment as to both parties was entered. This appeal by Potts ensued.
 

 Discussion
 

 Initially, we note that the appeal before us was brought by Potts only. Although Goldsmith has filed a brief in which she has argued various assignments of error, she failed to file a motion for appeal as required by La. C.C.P. art. 2121; therefore, we do not have jurisdiction over the controversy as it pertains to Goldsmith.
 

 The appellant bears the burden of complying with the procedural requirements for perfecting the appeal, and failure to follow the procedural formalities may result in the failure to invest the appellate court with jurisdiction over the controversy, in which case the appeal process terminates before it ever begins. There are three procedural elements for taking an appeal: (1) a motion or petition for appeal; (2) an order of appeal; and (3) a notice of appeal.
 
 Ratcliff v. Boydell,
 
 566 So.2d 197, 199 (La.App. 4th Cir.1990),
 
 writ denied,
 
 571 So.2d 647 (La.1990);
 
 Belser v. St. Paul
 

 Fire & Marine Ins. Co.,
 
 542 So.2d 168 (La.App. 1st Cir.1989). In the absence of any of these essential elements, an appeal court generally has no jurisdiction to consider an appeal.
 
 Ratcliff, supra; Belser, supra.
 

 Specifically, though a proceeding has been consolidated with another, an appeal by a party in one proceeding does not serve as such to the benefit of another party in his joined action.
 
 Darouse v. Mamon,
 
 201 So.2d 362 (La.App. 1st Cir.1967). Such is the case before us now. Here, our thorough review of the consolidated records gives no indication that Goldsmith made a motion for appeal, although Potts did, in any form, as required under art. 2121. Notably, the matters were consolidated at the trial court level; however, the consolidation of the proceedings at the trial court does not serve to consolidate a motion for appeal later in the proceedings.
 
 Darouse, supra.
 
 The motion for appeal must be made by each individual party aggrieved by the judgment; otherwise, it is as if they have not appealed. Although Goldsmith has filed a brief in this appeal seemingly as an appellant, we have no jurisdiction to consider her arguments as such. The only party subject to this appeal is Potts, and our holding only pertains to the trial court’s judgment as it affects her alone.
 

 In the instant case, the theory of
 
 res gestae
 
 was used to support the trial court’s conclusion that because Green’s actions formed a continuous chain of events that linked his crime to the collision, the crime exclusion applied. Although the theory of
 
 res gestae
 
 is typically used to determine the relevance or admissibility of evidence in a criminal case, in this case the trial court applied it by analogy to determine when Green’s crime of aggravated assault was completed. Such an application was unnecessary Land erroneous. This court has described
 
 res gestae
 
 events as “those criminal acts that constitute an integral part of the transaction which is the subject of the prosecution[.]”
 
 State v. Moore,
 
 44,429 (La.App.2d Cir.08/26/09), 20 So.3d 1137,
 
 writ denied, 2009-2166
 
 (La.04/09/10), 31 So.3d 378. Further, the doctrine of
 
 res gestae
 
 includes witness testimony of what occurred “before, during, or after the commission of the crime if a
 
 *641
 
 continuous chain of events is evident under the circumstances.”
 
 State v. Lowery,
 
 33,-905 (La.App.2d Cir.02/28/01), 781 So.2d 713,
 
 writ denied,
 
 2001-1041 (La.02/22/02), 809 So.2d 978.
 

 However, it is not necessary to use the theory of
 
 res gestae
 
 in this case, because an analysis of the facts of the case in light of the pertinent language of the insurance policy is sufficient to resolve the issue of coverage. The language of the insurance policy is the law between the parties. Moreover,
 
 res gestae
 
 has only been used by courts in criminal matters as a means of introducing evidence for convictions of defendants, not for determining the applicability of provisions in insurance policies. Therefore, the law applicable to contracts and insurance policies should be used for guidance in interpreting the policy provisions, not the theory of
 
 res gestae.
 
 We conclude that the trial court erroneously used such an analysis.
 

 Potts argues that the city court erred in excluding coverage under the intentional/criminal acts exclusion in the Safeway policy. We agree. The Safeway insurance policy that was issued to the vehicle driven by Green states in pertinent part:
 

 This policy does not apply under PART 1-LIABILITY-EXCLUSIONS ...
 

 |fi(n) to any automobile while being operated or used in the commission of a crime, other than a traffic violation.
 

 Insurance policies “should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion.”
 
 Louisiana Ins. Guar. Assn. v. Interstate Fire & Cas. Co.,
 
 93-0911 (La.01/14/94), 630 So.2d 759. Insurance companies can limit coverage in any way as long as it does not conflict with statutory provisions or public policy.
 
 Id.
 
 It is the public policy of Louisiana that liability insurance is issued for the protection of the general public as well as for the security of the insured.
 
 Walker v. State Farm Mut. Auto. Ins.,
 
 37,063 (La.App.2d Cir.06/25/03), 850 So.2d 882,
 
 writs denied,
 
 2003-2019 (La.12/19/03), 861 So.2d 574 and 2003-2117 (La.12/19/03), 861 So.2d 575. The goal of all liability policies is to benefit injured persons and to give coverage and protection to all insureds.
 
 Marcus v. Hanover Insurance Company,
 
 1998-2040 (La.06/04/99), 740 So.2d 603.
 

 However, this court has recognized the strong public policies of preventing wrongdoers from indemnifying themselves against their own intentional criminal acts and for the protection of innocent injury victims.
 
 Young v. Brown,
 
 27,018 (La.App.2d Cir.06/21/95), 658 So.2d 750,
 
 writ denied,
 
 95-1811 (La.10/27/95), 662 So.2d 1. This court has also pointed out that no reasonable policy holder would expect for his own intentional criminal acts to be insured, but they would expect for losses resulting from negligent or non-intentional acts to be covered because that is the primary reason insurance policies are purchased.
 
 Id.
 

 | RUnder the stated exclusion, the vehicle is not insured while it is being operated or used in the commission of a crime, other than traffic violations. We agree that as the facts of this case exist, the actions involving the vehicle were criminal and uninsured
 
 up until
 
 the assault against Sla-ton was concluded (i.e., at the point that Green stopped shooting and returned to the vehicle). As described by the trial court in its opinion, “Green stopped at the stop sign located at the intersection of Vaughn Avenue and Arlington Street, jumped out of his ear, pulled a gun and fired shots at occupants of another vehicle, jumped back in his car[.]” At that point,
 
 *642
 
 the commission of the crime ended. In fact, Green was criminally charged only for the assault of Slaton based on those facts.
 

 Afterwards, as noted by the trial court, Green “took off’; he proceeded to drive erratically, veering through a stop sign (a traffic violation, but still insured under the policy) and negligently hitting the vehicle driven by Potts. He was not charged with committing a crime for leaving the scene of the crime (i.e., shooting at Slaton), and at the time he hit the vehicle driven by Potts, the commission of the crime had clearly ended. Notably, Potts was not a victim of the crime either-she had absolutely no connection with the shooting. This was not a continuous chain of criminal évents as characterized by the trial court, and the negligent collision with Potts was not an integral part of the assault on Slaton. To find as such would serve to enlarge the criminal exclusion provision beyond what would be reasonably contemplated by the terms of the policy. We conclude that Green’s criminal actions were completed when he hit Potts’ |7vehicle, the exclusion was inapplicable to Green’s actions, and coverage should apply.
 

 Conclusion
 

 Considering the foregoing, we reverse the judgment of the trial court in favor of Safeway Insurance Company of Louisiana and remand this matter to the trial court for further proceedings as to Latasha Potts only. All costs of these proceedings are assessed to Safeway.
 

 REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.
 

 [1]
 

 . Green was ultimately convicted of aggravated assault with a firearm and is incarcerated.