## STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 18-740


**KING CHARLES, ET AL.**

**VERSUS**

**SAFEWAY INS. CO. OF LOUISIANA, ET AL.**



\*\*\*\*\*\*\*\*\*\*


APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, NO. 126407
HONORABLE VINCENT JOSEPH BORNE, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## D. KENT SAVOIE
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Elizabeth A. Pickett, D. Kent Savoie, and Jonathan W. Perry, Judges.


## REVERSED IN PART, AFFIRMED IN PART, AND RENDERED.


Perry, J. concurs and assigns additional reasons.

**Gregory John Laborde**
**Daigle Rayburn LLC**
**P. O. Box 3667**
**Lafayette, LA 70502-3667**
**(337) 234-7000**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
**Charles Bertrand**
**Curtis Narcisse**

**Scott F. Higgins**
**Laborde Earles Law Firm, LLC**
**P. O. Box 80098**
**Lafayette, LA 70598-0098**
**(337) 261-2617**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
**King Charles**
**Patricia Charles**
**Patricia Charles, o/b/o Katlyn Charles**
**Patricia Charles, o/b/o Kevin Charles**

**Holli K. Yandle**
**Tracy L. Oakley**
**W. Brett Cain**
**Michael W. Landry**
**400 E. Kaliste Saloom Rd., Ste. 4300 (70508)**
**P. O. Box 92807**
**Lafayette, LA 70509**
**(877) 323-8040**
**COUNSEL FOR DEFENDANT/APPELLANT:**
**Safeway Insurance Company of Louisiana**

**SAVOIE, Judge.**

Defendant Safeway Insurance Company of Louisiana, Inc. (Safeway) appeals a judgment rendered in favor of Plaintiffs finding that a policy of insurance issued by Safeway afforded coverage for the Plaintiffs' damages up to the policy limits. Plaintiffs answered the appeal seeking an increase in the total damages awarded. For the following reasons we reverse the judgment in part, affirm the judgment in part, and dismiss Plaintiffs' claims against Safeway.

## PROCEDURAL AND FACTUAL BACKGROUND

This case arises out of an auto accident between Plaintiff, King Charles, and Defendant, Curtis Bernard, that occurred on October 2, 2014, in Iberia Parish. Mr. Bernard, the son of Curtis Narcisse, was driving his father's 1999 Mitsubishi Gallant. Shortly before the accident, an Iberia Parish Sherriff's deputy, Philipp Early, attempted to pull Mr. Bernard over for a broken taillight. However, Mr. Bernard fled from the officer, and a high-speed chase ensued. Mr. Bernard's vehicle ultimately jumped over the railroad tracks and collided with the rear of Mr. Charle's vehicle, which was stopped at a stop sign at an intersection. The two vehicles then crossed the intersection and spun into a third vehicle, which caught fire. Mr. Bernard was arrested and charged with various crimes and traffic violations, and he ultimately pled guilty to aggravated obstruction of a public highway and possession of marijuana.

On June 11, 2015, Mr. Charles and his wife Patricia, individually, and on behalf of their two minor children, filed a petition for damages naming as defendants Mr. Narcisse, who was the owner of the 1999 Mitsubishi Gallant; Safeway, who was Mr. Narcisse's alleged liability insurer; Iberia Parish Sheriff's Department; and Deputy Early.

On July 6, 2015, Mr. Charles filed a First Supplemental and Amending Petition for Damages, this time naming as defendants, Mr. Bernard, Safeway, Deputy Early, and Sherriff Louis Ackal in his capacity as Sherriff of Iberia Parish. Deputy Early and Sherriff Ackal were eventually dismissed prior to trial.

In its Answer, Safeway asserted as a defense to coverage (1) material misrepresentations made by Mr. Narcisse on his insurance application, including his failure to list or disclose Mr. Bernard as a resident of his household and an unlicensed driver, and (2) the intentional and criminal acts exclusions found in the policy.

On November 23, 2015, Plaintiffs filed a motion seeking a summary judgment regarding Safeway's liability. On March 22, 2016, the trial court granted the motion in part, finding only that Mr. Narcisse had given Mr. Bernard permission to drive the 1999 Mitsubishi Gallant at the time of the accident.

On September 30, 2016, Safeway filed a motion seeking summary judgment dismissal of Plaintiffs' claims, alleging that there was no coverage because the damages caused by Mr. Bernard's intentional acts and commission of crimes were excluded from coverage under the policy. The motion was subsequently denied, and Safeway's application to this court for supervisory writs was also denied. *Charles v. Safeway Ins. Co. of La.*, 17-280 (La.App. 3 Cir. 5/25/17)(unpublished opinion).

On August 31, 2017, Plaintiffs and Safeway filed a joint stipulation agreeing that (1) Mr. Narcisse was not at fault, and (2) the amount of Plaintiffs' damages did not exceed the amount required for trial by jury under La.Code Civ.P. art. 1732.

A bench trial was held April 30, 2018. Thereafter, the trial court rendered a Judgment With Reasons, wherein it strictly construed the criminal acts exclusion in the Safeway policy and found that it did not apply because Mr. Bernard "committed a traffic violation which led to the flight from an officer[.]" The trial court also

2

rejected Safeway's material misrepresentation defense, finding that Mr. Narcisse did not intentionally fail to disclose that his son lived with him. Ultimately, the trial court found Mr. Bernard solely at fault for the subject accident and awarded Mr. Charles $35,000 in damages, plus judicial interest. It further awarded Mrs. Charles $7,000 for loss of consortium, as well as $1,000 in damages for loss of consortium to each of the parties' two children. It ruled that Safeway was liable for these damages up to the coverage limits.

Safeway appeals. It asserts the following as assignments of error:

1. The trial court committed manifest error when it failed to find that the Intentional Act Exclusion contained in the Safeway. . . policy applied when Curtis Bernard intentionally drove in a reckless and careless manner for which acts both bodily injury and other damages could reasonably be expected to result.

2. The trial court committed manifest error when it failed to find that the first Criminal Act Exclusion contained in the Safeway . . . policy of insurance applied when Curtis Bernard drove in a criminally negligent manner for which acts both bodily injury and other damages could reasonably be expected to result.

3. The trial court committed manifest error when it failed to find that the second Criminal Act Exclusion contained in the Safeway . . . policy of insurance applied when Curtis Bernard operated a motor vehicle in the commission of a crime and/or flight from a crime from which both bodily injury and other damages resulted.

4. The trial court committed manifest error when it failed to find that Curtis Narcisse misrepresented information material in his application for insurance submitted to Safeway . . . such that the policy of liability insurance issued by Safeway . . . is void *ab initio* and would not provide coverage for the accident.

Plaintiffs answered Safeway's appeal arguing that "the [j]udgment of the [t]rial [c]ourt should be modified to increase the amount of general and special damages awarded to King Charles from $35,000.00 to $50,000.00, plus judicial interest."

3

# ANALYSIS

*Safeway's Appeal*

In its first three assignments of error, Safeway challenges the trial court's finding that the intentional and criminal acts exclusions in the policy did not apply to the instant facts.

As stated by the Louisiana Supreme Court in *Rosell v. ESCO*, 549 So.2d 840, 844 (La.1989) (internal citations omitted):

> It is well settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong," and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. The appellate review of fact is not completed by reading only so much of the record as will reveal a reasonable factual basis for the finding in the trial court, but if the trial court or jury findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong.

We further keep in the mind the following principles when reviewing the insurance policy at issue:

> An insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code. The judiciary's role in interpreting insurance contracts is to ascertain the common intent of the parties to the contract.
>
> . . . .
>
> Ambiguous policy provisions are generally construed against the insurer and in favor of coverage. Under this rule of strict construction, equivocal provisions seeking to narrow an insurer's obligation are strictly construed against the insurer. . . .
>
> If the policy wording at issue is clear and unambiguously expresses the parties' intent, the insurance contract must be enforced as written. Courts lack the authority to alter the terms of insurance

4

contracts under the guise of contractual interpretation when the policy's provisions are couched in unambiguous terms.

*Cadwallader v. Allstate Ins. Co*, 02-1637, pp. 3-4 (La. 6/27/03), 848 So.2d 577, 580 (internal citations omitted).

The policy provisions Safeway relies upon state that the policy does not apply

(b) to bodily injury or property damage intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any insured person. The exclusion applies even if,

. . . .

> (2) such bodily injury or property damage is of a different kind or degree than intended or reasonably expected; or
>
> (3) such bodily injury or property damage is sustained by a different person than intended or reasonably expected.
>
> This exclusion applies regardless of whether or not such insured person is actually charged with, or convicted of a crime.

. . . .

(n) to bodily injury or property damage arising out of the ownership, maintenance or use of any automobile while being operated or used in the preparation to commit a crime, commission of a crime and/or flight from a crime, other than a traffic violation, regardless of whether or not such insured person is actually charged with, or convicted of a crime.

Safeway argues that the trial court was manifestly erroneous in failing to conclude the intentional and criminal acts exclusion in paragraph (b) above did not preclude coverage because Mr. Bernard intentionally chose to flee from the officer, was charged with related crimes, and the damages caused were reasonably expected to result from his intentional and criminal actions. Safeway also argues that coverage is precluded under paragraph (n) above because the damages at issue were incurred while Mr. Bernard was committing a crime other than a traffic violation. It challenges the trial court's finding that Mr. Bernard "committed a traffic violation

5

which led to the flight from an officer" and therefore the exclusion was not applicable.

We first focus on policy exclusion (n), which excludes from coverage damages arising from the use of an automobile during the commission of certain crimes, "other than a traffic violation."

In *Safeway Ins. Co. of Louisiana v. Gardner*, 15-696, p. 5 (La.App. 5 Cir. 4/27/16), 191 So.3d 684, 687, the court reviewed a similar policy exclusion for "any automobile while being operated or used in the commission of a crime, other than a traffic violation," and applied it to facts similar to those at issue here. In *Safeway,* the defendant driver, Mr. Gardner, refused to stop for on-duty police officers who had observed him commit several traffic violations and attempted to pull him over. After refusing to stop, Mr. Gardner forced his way through traffic, collided with six vehicles, and forced others off the road. He was charged with various crimes and ultimately pled guilty to possession of cocaine and battery of a police officer. According to Mr. Gardner, he refused to stop because he was in possession of cocaine. The trial court found that the policy exclusion was inapplicable and held Safeway liable because "[T]he pursuit which led to the chase and subsequent accident was due to observing multiple traffic violations . . . . Consequently, the vehicle was used for the commission of traffic violations, which are not valid exclusions from policy coverage." *Id.* at 688-89. On appeal, the *Safeway* court reversed the trial court, finding that the exclusion was in fact applicable, reasoning as follows:

> In our view, "crime," the key term in this exclusion, has a generally prevailing meaning that does not warrant a searching interpretive inquiry. . . . [W]e conclude that conduct made punishable under Title 14 of the Louisiana Revised Statutes is a "crime" for

6

purposes of this exclusion. Additionally, as the following demonstrates, we find this exclusion does not violate public policy.

The Louisiana legislature has directly commented on the public policy considerations of liability insurance, stating the purpose of such insurance is "to give protection and coverage to all insureds" and is intended "for the benefit of all injured persons." La. R.S. 22:1269(D). This general purpose is advanced in the specific context of motor vehicles by means of the Louisiana Motor Vehicle Safety Responsibility Law, La. R.S. 32:851-32:1043, which seeks to "eliminat[e] ... the reckless and irresponsible driver from the highways by requiring that owners and drivers of motor vehicles provide proof of financial responsibility[,]" e.g., compulsory automobile liability insurance. *Marcus v. Hanover Ins. Co.*, 98-2040 (La. 06/04/99), 740 So.2d 603, 606.

Although coverage exclusions generally do not comport with the policy of granting protection for injured persons, the exclusions here serve a separate public policy interest of prohibiting persons from insuring themselves against their own intentional or criminal acts. Withholding insurance coverage for intentional or criminal acts helps to disincentivize such conduct, which in turn serves the purpose of eliminating reckless and irresponsible drivers from the highways. *See Breland v. Schilling*, 550 So.2d 609, 610 (La.1989) ("The exclusion is designed to prevent an insured from acting wrongfully with the security of knowing that his insurance company will pay the piper for the damages."); *Goldsmith v. Green*, 45,532 (La.App. 2 Cir. 9/01/10), 47 So.3d 637, 641 (recognizing the strong public policy of preventing wrongdoers from indemnifying themselves against their own intentional criminal acts); *Young* [*v. Brown*, 27,018 (La.App. 2 Cir. 7/21/95), 658 So.2d 750, *writ denied*, 95-1811 (La. 10/27/95), 662 So.2d 1], *supra* at 753 ("The purpose of the exclusion is a recognition of a long-standing public policy against insuring illegal activities and thus, promoting their commission."). For these reasons, we find the crime exclusion does not violate public policy.

. . . .

The [trial] court's reasoning neglects to address the salient fact here: the cause of the damages. **It is clear from the record that the damages were caused by Mr. Gardner's flight from the police, not traffic violations**. Mr. Gardner admitted that he saw blue and red lights, but did not stop because he "was trying to get away" and "was trying to get rid of what [he] had on [him], drugs." He attempted to make his escape by forcing his way through congested rush-hour traffic, colliding with at least six vehicles and forcing others off the road.

7

We have little difficulty concluding that this was a crime. La. R.S. 14:108.1, captioned "Flight from an officer; aggravated flight from an officer," provides in pertinent part:

> A. No driver of a motor vehicle or operator of a watercraft shall intentionally refuse to bring a vehicle or watercraft to a stop knowing that he has been given a visual and audible signal to stop by a police officer when the officer has reasonable grounds to believe that the driver has committed an offense.
>
> . . . .
>
> C. Aggravated flight from an officer is the intentional refusal of a driver to bring a vehicle to a stop or of an operator to bring a watercraft to a stop, under circumstances wherein human life is endangered, knowing that he has been given a visual and audible signal to stop by a police officer when the officer has reasonable grounds to believe that the driver or operator has committed an offense.
>
> D. Circumstances wherein human life is endangered shall be any situation where the operator of the fleeing vehicle or watercraft commits at least two of the following acts: (1) Leaves the roadway or forces another vehicle to leave the roadway[;] (2) Collides with another vehicle or watercraft.[1]

Because the damages were caused by Mr. Gardner's operation of an automobile in the commission of a crime, coverage under Safeway's liability policy is excluded. See *Trumps v. USAgencies Cas. Ins. Co.*, 14-25 (La.App. 3 Cir. 05/07/14), 139 So.3d 643 (upholding trial court's determination that a person's flight in a vehicle from law enforcement was a "crime" for purposes of insurance policy exclusion).

---

[1] We note that La.R.S. 14:108.1 also lists the following acts:

(3) Exceeds the posted speed limit by at least twenty-five miles per hour.

(4) Travels against the flow of traffic or in the case of watercraft, operates the watercraft in a careless manner in violation of R.S. 34:851.4 or in a reckless manner in violation of R.S. 14:99.

(5) Fails to obey a stop sign or a yield sign.

(6) Fails to obey a traffic control signal device.

*Safeway,* 191 So.3d. at 687-89 (emphasis added).

We now review the facts of the instant case and consider whether Mr. Bernard's conduct that caused the accident was a "crime" for purposes of exclusion (n) in the applicable policy.

Deputy Early testified at trial regarding the accident and events leading to the accident. He indicated that when he and Mr. Bernard passed each other driving on Banks Street, Mr. Bernard pulled to the side of the road. Thereafter, Deputy Early saw that Mr. Bernard's vehicle had a cracked or broken taillight lens that was illuminating white, instead of red. Then, according to Deputy Early:

> I sorta turned around, the U-turn. And [Mr. Bernard's] vehicle, when it saw me do a U-turn, it started to go again. I got caught behind some vehicles, so I wasn't able to catch up to the vehicle until Dale and Lewis Street where I was behind the vehicle at a red light. . . . When the light turned green, I activated my lights and sirens for the vehicle to pull over into the parking lot. They failed to do so and continued East on Dale Street where it T's into Jefferson Terrace. Down through Jefferson Terrace, as I was pursuing the vehicle, it hit about 80 or 90 miles per hour and failed to stay in his lane, causing other vehicles to leave the roadway and continued to travel 80 or 90 miles per hour until it reached the tracks where the crash occurred.

Deputy Early also described the crash as follows:

> From Dale Street, which is where the pursuit initiated, we started going northbound on Jefferson Terrace at a high rate of speed. The tracks of Jefferson Terrace right before you get to St. Peter Street, it is kind of elevated. So [Mr. Bernard] was going about 80 or 90 miles per hour and when he hit the tracks his vehicle left the ground and hit [Mr. Charles' vehicle] that was facing northbound on Jefferson Terrace.
>
> . . . .
>
> It sent the suspect vehicle, along with [Mr. Charles's vehicle], across the intersection which collided into the Chevy Tahoe.

Deputy Early also indicated the Tahoe caught fire as a result of the accident. He further testified that after the accident, Mr. Bernard exited his vehicle through the driver's side window, fled the scene, and was eventually apprehended. Also

according to Deputy Early, Mr. Bernard told him that the reason he fled was "[b]ecause he didn't have a Louisiana driver's license." He also noted that there was no indication that Mr. Bernard intended to collide with, or veer into, Mr. Charles's vehicle. Rather, according to Deputy Early, Mr. Bernard had made the choice to run and was trying to get away.

Mr. Bernard was subsequently arrested and charged with violating various criminal statutes, including: La.R.S. 14:108(B), "Resisting an officer"; La.R.S. 14:108.1, "Flight from an officer; aggravated flight from an officer; La.R.S. 14:96, "Aggravated obstruction of a highway of commerce"; La.R.S. 40:966, "[D]istribution or possession with intent to distribute narcotic drugs listed in Schedule I; possession of marijuana. . . ." He was also charged with violations of various traffic regulations under Title 32 of the Louisiana Revised Statutes. Ultimately, he pled guilty to aggravated obstruction of a highway, which is defined as "the intentional or criminally negligent placing of anything or performance of any act on any . . . road, highway, [or] thoroughfare, . . . wherein it is foreseeable that human life might be endangered." La. R.S. 14:96. Mr. Bernard also pled guilty to possession of a Schedule I narcotic, a violation of La.R.S. 40:966.

Mr. Bernard's deposition testimony was also submitted by the parties in lieu of him testifying live at trial. Therein, Mr. Bernard agreed that when Deputy Early activated his lights and tried to stop him, he made the decision that he was not going to stop. He testified, "And then I just got scared. And I thought he was probably going to arrest me for not having no license or nothing. And so . . . I kept going straight[.]" He also admitted that he had no intention of stopping for Deputy Early and that when Deputy Early was behind him on Dale Street with his lights flashing, "I wasn't thinking. I was just - - I don't know. I just kept going." Mr. Bernard also

testified, "as soon as I jumped the track, I just blacked out after that. I don't remember nothing happening after that."

We conclude that under the instant facts, the trial court was manifestly erroneous in failing to find Plaintiffs' damages were caused by Mr. Bernard's commission of a crime, and not traffic violations. As in *Safeway,* the undisputed facts show that Mr. Bernard ran into Mr. Charles's vehicle while intentionally fleeing from an officer in violation of La.R.S. 14:108.1, which is a crime. While Mr. Charles tries to distinguish *Safeway* because Mr. Bernard's underlying reason for fleeing from the officer was to avoid a traffic violation, we find that the *reason* Mr. Bernard committed the crime (i.e. flight from an officer) is irrelevant to the question of *whether* he committed a crime. The policy is clear that damages arising out of the use of an automobile while that automobile is being used to commit a crime, other than a traffic violation, are excluded from coverage.[2]

Because we find that exclusion (n) under the policy is applicable, and therefore coverage is not available, we do not consider Safeway's remaining arguments on appeal. We reverse the trial court's ruling against Safeway and dismiss Plaintiffs' claims against it.

### *Plaintiffs' Answer to the Appeal*[3]

On appeal, Plaintiffs seek to increase the $35,000.00 in damages awarded to Mr. Charles to $50,000.00. The parties stipulated that the amount of his damages did not exceed $50,000.00

---

[2] Given the undisputed intentional nature of Mr. Bernard's violation of La.R.S.14:108.1, we do not consider whether a policy exclusion that excludes criminal negligence from coverage is a violation of public policy or enforceable. *See, Young,* 658 So.2d 750.

[3] Although we dismiss Plaintiffs' claims against Safeway, there is a judgment against Mr. Bernard in favor of Plaintiffs. Therefore, we will discuss Plaintiffs' answer to the appeal.

11

A trier of fact is given great discretion in its assessment of damages. *Monte v. State Farm Mut. Auto. Ins. Co.*, 13-979 (La.App. 3 Cir. 5/21/14), 139 So.3d 1139, *writ denied,* 14-1289 (La. 9/29/14), 149 So.3d 267. "Because the discretion vested in the trier of fact is so great, even vast, an appellate court should rarely disturb an award on review." *Id.* at 1148.

On appeal, Plaintiffs ask us to increase Mr. Charles's award, but provide no explanation or argument as to why they think we should do so. Rather, they generally refer to Mr. Charles's testimony that he was in good health before the accident, he injured his back, neck, and shoulder in the accident and had not recovered from his injuries or was able to return to work as of the date of trial, that he treated regularly for his injuries but had to stop because of financial reasons, and that prior to the accident he made approximately $18,000.00 to $20,000.00 per year as a farmer. Plaintiffs also note a medical expenses summary entered into the record showing medical expenses totaling $11,427.02. Plaintiffs do not argue, much less explain, how this evidence shows an abuse of discretion on the part of the trial court, and therefore, we are not inclined to upset the trial court's damages award on appeal. The amount of damages found to be incurred by Mr. Charles is affirmed.

## CONCLUSION

For the following reasons, we reverse the trial court's judgment against Safeway and dismiss Plaintiffs' claims against it. We further affirm the amount of damages the trial court found to have been incurred by Mr. Charles. Costs of this appeal are assessed to Plaintiffs.

**REVERSED IN PART, AFFIRMED IN PART, AND RENDERED.**

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT
CA 18-740

KING CHARLES, ET AL.

VERSUS

SAFEWAY INS. CO. OF LOUISIANA, ET AL.

**PERRY, Judge, concurring to assign additional reasons.**

I agree wholeheartedly with the majority's well-reasoned opinion. However,

I write separately to assign additional reasons.

Louisiana Revised Statutes 22:860 (A) provides:

Except as provided in Subsection B of this Section, R.S. 22:1314, and 1315, no oral or written misrepresentation or warranty made in the negotiation of an insurance contract, by the insured or in his behalf, shall be deemed material or defeat or void the contract or prevent it attaching, unless the misrepresentation or warranty is made with the intent to deceive.

In *Kahl v. Chevalier*, 15-1028 (La.App. 3 Cir. 3/23/16), 188 So.3d 449, 455–

56, this court held that in interpreting La.R.S. 22:860:

[A]n insurer has the burden of proving whether an insured made material misrepresentations sufficient to rescind the automobile insurance policy. *Abshire v. Desormeaux*, 07-26 (La.App. 3 Cir. 11/7/07), 970 So.2d 1188, *writ denied*, 08-226 (La. 4/4/08), 978 So.2d 326. We note that our colleagues in the second circuit interpreted La.R.S. 22:860 to mean that an insurance policy may be voided if an insurer proves that: "(1) the insured made a false statement; (2) the false statement was material; and (3) it was made with intent to deceive." *Willis v. Safeway Ins. Co. of La.*, 42,665, p. 6 (La.App. 2 Cir 10/24/07), 968 So.2d 346, 350 (citing *West v. Safeway Ins. Co. of La.*, 42-028 (La.App. 2 Cir. 3/21/07), 954 So.2d 286). This court recently explained that "[i]ntent to deceive under La.R.S. 22:860 is determined from circumstances indicating the insured's knowledge of the falsity of the representations made in the application." *Burley v. New York Life Ins. Co.*, 15–263, p. 7 (La.App. 3 Cir. 11/25/15), 179 So.3d 922, 930 (citing *State Farm Mut. Auto. Ins. Co. v. Bridges*, 45,162 (La.App. 2 Cir. 5/19/10), 36 So.3d 1142). Further, "[t]o prove materiality of a false statement under La.R.S. 22:860, the insurer must show that the statement was 'of such a nature that, had it been true, the insurer would either not have contracted or would have contracted only at a higher

premium rate.'" *Id.* (quoting *Ned v. Magnolia Life Ins.*, 590 So.2d 733, 735 (La.App. 3 Cir. 1991)).

The record is replete with false statements or misrepresentations Curtis Narcisse ("Mr. Narcisse") made in his Safeway application for liability insurance that directly impacted Safeway's decision to accept the risk and affected the insurance premium. In his trial testimony, Mr. Narcisse admitted he lived on Field Street in New Iberia when he applied for the Safeway policy, not at the Corrine Street address he provided on his application; as the testimony shows, the garaging address would have been integral to Safeway's issuance of a policy of insurance. Even though he was living on Field Street with his wife and his two children, Curtis Bernard, twenty years of age, and Megan Bernard, twenty-one years of age, his application for insurance shows there were no family members age 15 or older living in the household; this becomes even more significant because neither of these children were licensed drivers, and Mr. Narcisse was fully aware unlicensed drivers were not insurable. Finally, although Mr. Narcisse knew he owned another vehicle and that it was insured by a different insurance company, he denied both facts on his Safeway application. Thus, it is clear that these material misrepresentations were made with an intent to deceive, and had Safeway known the truth, it would either have declined to accept the risk or would have undertaken that risk at a significantly higher premium.

After viewing these multiple falsehoods and material misrepresentations in light of Safeway's underwriting policies, I find that Safeway established its material misrepresentation defense and that this contract of insurance was void from its inception.