KRISTEN MOON       *       NO. 2022-CA-0455

VERSUS       *

      COURT OF APPEAL

SAFEWAY INSURANCE       *

COMPANY OF LOUISIANA       FOURTH CIRCUIT

      * 

      STATE OF LOUISIANA

* * * * * * *

APPEAL FROM
ST. BERNARD 34TH JUDICIAL DISTRICT COURT
NO. 20-1156, DIVISION "B"
Honorable Jeanne Nunez Juneau, Judge
* * * * * *
**Judge Rosemary Ledet**
* * * * * *

(Court composed of Judge Rosemary Ledet, Judge Paula A. Brown, Judge Pro
Tempore James F. McKay, III)

Brandon J. Melerine
Michael C. Ginart, Jr.
Joyce Duhe Young
Nicholas N.S. Cusimano
John C. Ginart
LAW OFFICES OF MICHAEL C. GINART, JR. & ASSOCIATES
2114 Paris Road
Chalmette, LA 70043

      COUNSEL FOR PLAINTIFF/APPELLANT


Davis R. Peltier
Michelle D. Brooks
PORTEOUS HAINKEL & JOHNSON, LLP
211 West Fifth Street
Thibodaux, LA 70301

      COUNSEL FOR DEFENDANT/APPELLEE

           **AFFIRMED**
           **December 6, 2022**

This is an insurance coverage dispute. From the trial court's judgment granting the summary judgment motion filed by the defendant-insurer, Safeway Insurance Company of Louisiana ("Safeway"), the plaintiff-insured, Kristen Moon, appeals. For the reasons that follow, we affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

The relevant facts are undisputed. Safeway issued an automobile liability policy to Ms. Moon covering a vehicle that she personally owned (the "Vehicle"). Ms. Moon's husband, Herbert Moon, was listed on the policy as a permissive user. On October 14, 2019—while the Safeway policy was in effect—Mr. Moon backed the Vehicle into a police vehicle while attempting to flee from the police (the "Incident"). The following day, the police informed Ms. Moon that her husband had been arrested and that the Vehicle had been towed.[1] Thereafter, Ms. Moon filed a claim with Safeway for the property damages to the Vehicle that occurred

---

[1] In the petition, Ms. Moon alleges that she obtained a copy of the police report, which indicated that her husband "had suddenly backed up striking a police vehicle with the rear end of the [Vehicle]."

1

as a result of the Incident. Safeway denied Ms. Moon's claim based on the criminal and intentional acts exclusions (the "Exclusions") in its policy.

Following Safeway's denial of her claim, Ms. Moon filed a petition for damages against Safeway. In her petition, Ms. Moon alleged that Safeway issued a policy of collision insurance to her for the Vehicle, that Safeway's policy was in effect on the day of the Incident, that the Vehicle sustained damages as a result of the Incident, and that Safeway had denied coverage based upon the Exclusions. Ms. Moon prayed for not only property damages, but also penalties for bad faith refusal to pay her claim.

After answering the suit, Safeway filed a summary judgment motion based on the Exclusions. Safeway supported its summary judgment motion with an affidavit from its representative, Rhonda Marshall; and a copy of the deposition of the investigating officer, Christopher Bassil. Attached to Ms. Marshall's affidavit was a certified copy of Safeway's policy. Attached to the Officer Bassil's deposition were copies of the police report that he prepared for the Incident and the bill of information setting forth the criminal charges that were made against Mr. Moon for the Incident. The criminal charges included aggravated criminal damage to property, a violation of La. R.S. 14:55, for striking the police vehicle.

Opposing Safeway's motion, Ms. Moon introduced no evidence; rather, she relied solely on the jurisprudence. The jurisprudence, according to Ms. Moon, has recognized a policy against excluding coverage for an innocent insured who acts in

2

in good faith. Following a hearing, the trial court granted Safeway's motion. This appeal followed.

**DISCUSSION**

*Standard of Review and Governing Principles*

An appellate court reviews a trial court's judgment on a summary judgment motion *de novo. Planchard v. New Hotel Monteleone, LLC*, 21-00347, p. 2 (La. 12/10/21), 332 So.3d 623, 625. In so doing, an appellate court applies the same criteria that govern a trial court's decision as to whether a summary judgment motion should be granted—"whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law." *Planchard*, 21-00347, pp. 2-3, 332 So.3d at 625. The statutory provision governing a summary judgment motion states that a "summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(A)(3). The burden of proof on a summary judgment motion is governed by La. C.C.P. art. 966(D)(1), which provides for a shifting burden of proof.

An adverse party to a supported summary judgment motion may not rest on the mere allegations or denials of that party's pleading, but that party's response, by affidavits or as otherwise provided by law, must set forth specific facts showing that there is a genuine issue of material fact for trial. If the adverse party fails to do

so, the trial court shall render summary judgment against that party. La. C.C.P. art. 967(B).[2]

The summary judgment procedure is favored; and the procedure "is designed to secure the just, speedy, and inexpensive determination of every action." La. C.C.P. art. 966(A)(2). The purpose of the procedure is to pierce the pleadings and to assess the evidence to determine if there are any genuine issues of material fact requiring a trial. *See Cutrone v. English Turn Prop. Owners Ass'n, Inc.*, 19-0896, p. 7 (La. App. 4 Cir. 3/4/20), 293 So.3d 1209, 1214. As this Court has observed, "[t]he determination of whether a fact is material turns on the applicable substantive law." *Roadrunner Transp. Sys. v. Brown*, 17-0040, p. 7 (La. App. 4 Cir. 5/10/17), 219 So.3d 1265, 1270. Stated otherwise, "facts are material if they potentially insure or preclude recovery, affect a litigant's ultimate success, or determine the outcome of the legal dispute." *Louisiana Bank v. Williams*, 591 So.2d 375, 377 (La. App. 3d Cir. 1991); *Precept Credit Opportunities Fund, L.P. v. Walker*, 21-0670, p. 5 (La. App. 4 Cir. 6/22/22), 343 So.3d 299, 304. "Despite the presence of disputed facts, summary judgment will be granted as a matter of law if the contested facts present no legal issues." *Rapp v. City of New Orleans*, 95-1638, p. 4 (La. App. 4 Cir. 9/18/96), 681 So.2d 433, 437 (citing *Davenport v. Amax Nickel, Inc.*, 569 So.2d 23, 27 (La. App. 4th Cir. 1991)).

---

[2] La. C.C.P. art. 967(B) provides:

> When a motion for summary judgment is made and supported as provided above, an adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him.

Whether an insurance policy provides for—or precludes—coverage as a matter of law is an issue that can be resolved within the framework of a summary judgment motion. *Orleans Par. Sch. Bd. v. Lexington Ins. Co.*, 12-1686, p. 9 (La. App. 4 Cir. 6/5/13), 118 So.3d 1203, 1212 (citing *Sumner v. Mathes*, 10-0438, p. 6 (La. App. 4 Cir. 11/24/10), 52 So.3d 931, 935). In analyzing insurance policies, the following elementary legal principles apply:

- An insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Civil Code.[3]

- The parties' intent as reflected by the words in the policy determine the extent of coverage. Such intent is to be determined in accordance with the general, ordinary, plain and popular meaning of the words used in the policy, unless the words have acquired a technical meaning. LSA-C.C. Art. 2047.

- An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion.

- Absent a conflict with statutory provisions or public policy, insurers, like other individuals, are entitled to limit their liability and to impose and to enforce reasonable conditions upon the policy obligations they contractually assume.

- [I]f the policy wording at issue is clear and unambiguously expresses the parties' intent, the insurance contract must be enforced as written. LSA-C.C. Art. 2046 (providing that when the words of a contract are clear, no further interpretation may be made to determine the parties' intent).

- When the language of an insurance policy is clear, courts lack the authority to change or alter its terms under the guise of interpretation. The determination of whether a contract is clear or ambiguous is a question of law.

*Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 93-0911 (La. 1/14/94),

---

[3] As this Court recently observed, "[t]he Louisiana Civil Code contains instructions regarding the proper method of contractual interpretation. Those instructions are set forth in La. C.C. arts. 2045 to 2057." *Heard, McElroy & Vestal, L.L.C. v. Schmidt*, 22-0221, p. 10 (La. App. 4 Cir. 9/21/22), ___ So.3d ___, ___, 2022 WL 4363941, *5 (internal citations omitted).

630 So.2d 759, 763-64 (citations omitted).

*Ms. Moon's Arguments*

On appeal, Ms. Moon argues that the trial court erred in granting Safeway's summary judgment motion for two reasons. First, she contends that application of the Exclusions is contrary to Louisiana's public policy. Second, she contends that there exists a genuine issue of material fact regarding the sequence of events and whether the damage to the Vehicle was caused in the course of a criminal act. We separately address each of her contentions. Before doing so, however, we review the language in Safeway's policy setting forth the Exclusions.

*Safeway's Policy Language*

The Safeway policy language at issue provides that under Part IV—Physical Damages—the policy does not apply to, among other things, the following:

> (q) to damage intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any Insured person or any other person residing with the Insured at the time of the loss. This exclusion applies even if: (1) such insured person lacks the mental capacity to govern his or her own conduct (2) such damage is of a different kind or degree than Intended or reasonably expected; or (3) such damage is sustained by a different person than Intended or reasonably expected. This exclusion applies regardless of whether or not such insured person is actually charged with, or convicted of a crime.

> (s) to damage arising out of the ownership, maintenance or use of any automobile while being operated or used in the preparation to commit a crime, commission of a crime and/or flight from a crime, other than a traffic violation, regardless of whether or not such insured person is actually charged with, or convicted of a crime.

We find, agreeing with the trial court,[4] that the policy language setting forth the Exclusions is clear and unambiguous as applied here. The Incident was the

---

[4] In its oral reasons for judgment, the trial court found the policy language was clear and unambiguous "that Mr. Moon is a permissive user and, therefore, is an insured." The policy language the trial court cited was that the policy does not cover "damage intended by or would reasonably be expected to result from the intentional or criminal acts or omissions of any insured person or other person residing with insured at the time of the loss."

result of Mr. Moon's act of backing the Vehicle into a police vehicle in an attempt to flee from the police. Mr. Moon's act was both criminal and intentional. Mr. Moon was listed on the policy as a permissive user, and he was a resident relative. The Exclusions, as Safeway contends, apply regardless of whether Ms. Moon was the party operating the Vehicle when it was being used in the commission of a crime or to flee from the police. *See Trumps v. USAgencies Cas. Ins. Co.*, 14-25, p. 4 (La. App. 3 Cir. 5/7/14), 139 So.3d 643, 646 (observing that the insured's "willingness or unwillingness to participate in the crime is irrelevant to the coverage determination"). Moreover, Ms. Moon's damage claim arises out of her ownership of the Vehicle. Her claim is solely for property damages; the driver— Mr. Moon—is not a party to this litigation.

In sum, the Exclusions, as applied here, are clear and unambiguous; and the applicability of the Exclusions to the facts on which this suit is based—the Incident—is not in dispute. Rather, Ms. Moon's contention is that the Exclusions are contrary to public policy and, for that reason, should not be enforced.

*Safeway's Exclusions Do Not Violate Public Policy*

Ms. Moon contends that the jurisprudence has recognized a policy against excluding coverage for an innocent insured who acts in in good faith. Ms. Moon's argument is premised on two cases—*Osbon v. Nat'l Union Fire Ins. Co.*, 93-1975 (La. 2/28/94), 632 So.2d 1158; and *Miller v. Tassin*, 04-2115 (La. App. 4 Cir. 5/25/05), 905 So.2d 365. Blending the reasoning in *Osbon* and *Miller*, Ms. Moon contends that there is a two-part test for invalidating policy exclusions based on the jurisprudence—the insured is both (i) innocent; and (ii) acted in good faith.

Countering, Safeway contends that *Osbon* and *Miller* are distinguishable and that the case the trial court cited in its oral reasons for judgment—*Safeway Ins. Co.*

7

*of La. v. Gardner,* 15-696 (La. App. 5 Cir. 4/27/16), 191 So.3d 684[5]—is

dispositive. We agree. But, to explain our holding, we briefly address each of the

trio of cases—*Osbon*, *Miller*, and *Gardner*—in reverse order.

### *Gardner*

*Gardner* involved a coverage issue under an automobile liability policy. The

defendant driver—Exavier Gardner ("Gardner")—was operating a vehicle, and the

police were following him. The police suspected that the vehicle Gardner was

driving recently had been stolen. After witnessing Gardner commit several traffic

violations, the police activated their sirens. Gardner attempted to flee. In so doing,

Gardner collided with multiple other vehicles. Gardner was charged with various

crimes arising out of the incident. Individuals involved in the collisions filed suit

against, among others, Safeway, in its capacity as Gardner's liability insurer.

In response, Safeway invoked its policy exclusions for intentional and

criminal acts. The trial court found that the policy exclusions were inapplicable,

reasoning that the accident was due to the police officers observing multiple traffic

violations. Reversing, the appellate court found the exclusions applicable,

reasoning that "[Gardner] attempted to make his escape by forcing his way through

congested rush-hour traffic, colliding with at least six vehicles and forcing others

off the road" and concluding that "this was a crime." *Gardner*, 15-696, p. 8, 191

So.3d at 689.

---

[5] In its oral reasons for judgment, the trial court found that the Exclusions do not violate public policy. Citing *Gardner*, the trial court observed that "[i]t has been long-standing that these exclusions have been upheld." The trial court, quoting *Gardner*, stated "[t]he purpose of the exclusion is a recognition of the long-standing public policy against insuring illegal activities and thus, promoting their commission."

The appellate court, in *Gardner*, not only found the exclusions for intentional or criminal acts applied, but also found the exclusions did not violate public policy, observing:

> Although coverage exclusions generally do not comport with the policy of granting protection for injured persons, the exclusions here serve a separate public policy interest of prohibiting persons from insuring themselves against their own intentional or criminal acts. Withholding insurance coverage for intentional or criminal acts helps to disincentivize such conduct, which in turn serves the purpose of eliminating reckless and irresponsible drivers from the highways. *See Breland v. Schilling,* 550 So.2d 609, 610 (La. 1989) ("The exclusion is designed to prevent an insured from acting wrongfully with the security of knowing that his insurance company will pay the piper for the damages."); *Goldsmith v. Green*, 45,532 (La. App. 2 Cir. 9/01/10), 47 So.3d 637, 641 (recognizing the strong public policy of preventing wrongdoers from indemnifying themselves against their own intentional criminal acts); *Young* [*v. Brown*, 27,018 (La. App. 2 Cir. 6/21/95), 658 So.2d 750,] 753 ("The purpose of the exclusion is a recognition of a long-standing public policy against insuring illegal activities and thus, promoting their commission."). For these reasons, we find the crime exclusion does not violate public policy.

*Gardner*, 15-696, p. 7, 191 So.3d at 688.

Other Louisiana courts have enforced similar criminal and illegal act ("illegal activities") exclusions, finding them clear and unambiguous and valid over public policy objections. *Charles v. Safeway Ins. Co.*, 18-740, pp. 6-7 (La. App. 3 Cir. 5/15/19), 272 So.3d 970, 976 (citing *Gardner*, 15-696, p. 5, 191 So.3d at 687).[6] Citing *Gardner*, a federal district court observed that "courts generally . . . acknowledge the public policy which actually supports such [illegal activities]

---

[6] *See Trumps*, 14-25, pp. 4-5, 139 So.3d at 646 (internal quotations omitted) (observing that "[t]he issue of whether Ms. Trumps' presence in the vehicle was voluntary or involuntary is not relevant to whether the exclusion in the USAgencies policy violates public policy" and enforcing the exclusion); *McNamara v. Augustino Bros., Inc.*, 08-1522, p. 7 (La. App. 4 Cir. 5/13/09), 13 So.3d 736, 741 (observing that "[b]ecause it is against public policy in Louisiana to permit an insured to be indemnified for the insured's own intentional criminal acts, we find that the Criminal Acts Exclusion in this case does not violate public policy); *Richardson v. Imperial Fire & Cas. Ins. Co.*, 14-0368 (La. App. 1 Cir. 12/30/14) (*unpub.*), 2014 WL 7390740, at *6 (observing that the plaintiff pointed to "no statute that prohibits an insured from contracting with its liability insurer to do what the relevant part of exclusion here does, exclude coverage for damages resulting from acts by the insured when fleeing law enforcement authorities or evading law enforcement authorities" and noting it was "aware of no such statute").

exclusions" and that "[w]hen courts decline to enforce illegal activities exclusions, they generally do so based on the specific language of an exclusion at issue in that case; they do not broadly hold all such exclusions invalid as contrary to public policy." *Henrikson v. Choice Products USA, LLC*, CV 16-1317 (MJD/LIB), 2017 WL 449591, at *1 (D. Minn. Feb. 2, 2017) (internal citations and parentheticals omitted).

The explanation in *Henrikson* of the jurisprudence's general treatment of illegal activities exclusions is apt here. As explained above, the Exclusions are clear, unambiguous, and enforceable—not against public policy. *Osbon*, one of the cases Ms. Moon cites, involved a mandatory statutory provision that the Louisiana Supreme Court construed as dictating coverage of the innocent spouse under a fire insurance policy. *Miller*, the other case Ms. Moon cites, did not involve a criminal or intentional act exclusion; rather, it involved a permissive use exclusion. Ms. Moon's reliance on those cases is misplaced. Nonetheless, we briefly review them.

### *Osbon*

*Osbon* presented the classic innocent, co-insured spouse scenario—husband commits arson and burns down house, and innocent co-insured wife seeks to recover from fire insurance (or home owners) insurer.[7] The Louisiana Supreme Court framed the issue presented as "whether Pauline Osbon is barred from recovering under the policy issued by National Union because her home and its contents were destroyed by a fire intentionally set by her husband, James Osbon,

---

[7] *See* Brent R. Lindahl, *Insurance Coverage for an Innocent Co-Insured Spouse,* 23 WM. MITCHELL L. REV. 433, 435-37 (1997) (observing that the typical innocent co-insured spouse case presents the scenario of "[o]ne spouse intentionally sets fire to the marital residence, either damaging the home and personal property or destroying everything" and "[t]he [homeowner] insurer denies recovery [to the innocent spouse] based on the policy's intentional act exclusion or fraud provision, contending that the intentional or fraudulent acts of one insured voids coverage for all co-insureds, including the innocent co-insured spouse").

Sr." *Osbon*, 632 So.2d at 1159. Both the trial court and the appellate court in *Osbon* found in National Union's favor. The lower courts held the intentional act exclusion was clear, unambiguous, and precluded coverage.

Reversing, the Supreme Court relied on the mandatory language of the standard Louisiana fire insurance policy form (the "Form"). The Supreme Court reasoned that the use of the article "the" in front of "insured" in the Form was ambiguous. The Supreme Court found it appropriate to restrictively construe the word "the"—limiting it to the wrongdoer and allowing the innocent spouse to recover. In so doing, the Supreme Court observed:

> This interpretation is in line with the legislative intent in enacting the exclusion and condition contained in La. R.S. 22:691F(2). Specifically, we do not believe that the legislature intended to impute the incendiary actions of an insured to the innocent co-insured who has no control over the unauthorized conduct. Nor do we think that the legislature intended to penalize an innocent insured, here, a victim of arson, with the perpetrator of a wrongful act. That is, having lost the property, the innocent insured would be victimized once again by the denial of the proceeds under the insurance policy. We do not believe that the legislature intended for the statute to have such a harsh and inequitable result.

*Osbon*, 632 So.2d at 1160.

The Supreme Court then looked to National Union's policy language and determined that "National Union failed to provide coverage in conformity with or in excess of the [Form]" and that "reformation of the policy to conform with the [Form] is appropriate." *Osbon*, 632 So.2d at 1161 (citing *Rudloff v. Louisiana Health Services and Indemnity*, 385 So.2d 767, 771 (La. 1980)). Based on the reformed policy, the Supreme Court held that Pauline Osbon was not barred from recovering from National Union for the loss occasioned by her husband's incendiary actions.

11

To summarize, the Supreme Court in *Osbon* reformed the intentional loss exclusion to match the Form and held that National Union's policy must cover the innocent co-insured. The Form language at issue in *Osbon* is distinguishable from Safeway's policy language setting forth the Exclusions. The Exclusions are not limited to the wrongdoer who commits the crime—"the" insured. Moreover, Mr. Moon is the named insured's husband; Mr. Moon resided with Ms. Moon at the time of the loss; and Mr. Moon had Ms. Moon's expressed or implied permission to use the vehicle. Indeed, Mr. Moon is listed on the policy as a permissive user— driver. Thus, he is an insured under the policy. The Exclusions are enforceable to preclude coverage. Ms. Moon's reliance on *Osbon* is misplaced.

### *Miller*

*Miller* was a personal injury suit. The defendant—Stephanie Tassin ("Tassin")—was the driver of a vehicle that she borrowed from a friend. Unbeknownst to Tassin, the vehicle that she was driving when she was involved in the accident had been stolen from a dealership; Tassin's friend did not own the vehicle. Tassin's automobile insurance policy contained a permissive use exclusion, which excluded any person "using a motor vehicle without the express or implied permission of the owner, or outside of the scope of permission given." Tassin's insurer asserted the exclusion, contending that Tassin had not been given permission by the owner—the dealership—and, thus, was excluded from coverage. Finding application for the exclusion would violate public policy, this court reasoned that "[l]iability insurance should cover, as a matter of public policy and law, an innocent driver in good faith who had no way of knowing the vehicle she was driving was actually stolen." *Miller*, 04-2115, p. 6, 905 So.2d at 368.

This case in distinguishable from *Miller* in two respects. First, *Miller* did not involve a criminal or intentional act exclusion; *Miller* involved a permissive use exclusion. *Miller* was premised on the public policy of requiring all vehicle have liability insurance; this public policy is inapposite here. Second, *Miller* involved an innocent driver who had no way of knowing that the vehicle she was driving was stolen. Here, Mr. Moon was a permissive user of the Vehicle that he was driving during the commission of a crime. Ms. Moon's reliance on *Miller* is misplaced.

To recap, neither *Osbon* nor *Miller* is analogous to the instant case; rather, the instant case is analogous to *Gardner*. Agreeing with the trial court, we find the Exclusions are clear, unambiguous, and enforceable—the Exclusions do not violate public policy.

*Sequence of Events*

Ms. Moon's next contention is that the extent of damages to the Vehicle creates a genuine issue of material fact regarding the sequence of events and whether the damages were incurred during criminal activity. She cites Officer Bassil's deposition testimony that the only damages he observed to the Vehicle was minor scuffs and a flat tire. Ms. Moon contends that those minor damages are incongruous with Safeway's damage estimate, which deemed the Vehicle a total loss. According to Ms. Moon, given Safeway's estimate far exceeded the minor damages Officer Bassil observed, the damages to the vehicle must have occurred some time after the criminal activity had ended. If that is true, Ms. Moon submits that the Exclusions would not apply. Regardless, she contends that this ambiguity in the sequence of events creates a genuine issue of material fact, precluding summary judgment.

Safeway counters that Ms. Moon cannot rely on unfounded, unsupported allegations that the property damages to the Vehicle occurred during a separate incident. According to Safeway, the only reasonable inference is that the property damages to the Vehicle occurred when Mr. Moon backed the Vehicle into the police vehicle. In fact, Officer Bassil testified that the damages to the Vehicle was related to this specific act. Further, Ms. Moon filed suit for the loss that occurred on October 14, 2019; she failed to allege or claim a separate loss.

Ms. Moon raises the issue regarding the sequence of events for the first time on appeal. As a general rule, an appellate court will not address an issue raised for the first time on appeal that was not pled, urged, or addressed in the trial court—the "waiver rule." *In re Precept Credit Opportunities Fund, L.P.*, 21-0428, p. 5, n. 3 (La. App. 4 Cir. 1/19/22), ___ So.3d ___, ____, 2022 WL 178603, *3, *writ denied*, 22-00341 (La. 5/10/22), 337 So.3d 910 (collecting cases and citing Uniform Rules - Courts of Appeal, Rule 1-3 (providing "[t]he Courts of Appeal will review only issues which were submitted to the trial court . . . unless the interest of justice clearly requires otherwise").

Here, the closest Ms. Moon came to pleading this sequence of events issue in her petition was her conclusory allegation that "[a]ssuming the Police Report is correct it is plaintiff's belief that the [V]ehicle was damaged after her husband's arrest and [after he was] taken to jail and before plaintiff retrieved the [V]ehicle a few days later." In her petition, however, Ms. Moon only sought to recover property damages to the Vehicle as a result of the Incident. Nowhere in the petition is the date of the loss identified as other than the date of the Incident—October 14, 2019. Stated otherwise, the petition did not include any claim for damages

resulting from a subsequent incident. The petition was limited to the loss arising from the Incident.

Nor did Ms. Moon raise the sequence of events issue in opposing Safeway's summary judgment motion or offer any evidence to support it; rather, her contention is based solely on her conclusory allegations and unsupported speculation. But, "[m]ere conclusory allegations, improbable inferences and unsupported speculation will not support a finding of a genuine issue of material fact." *Sears v. Home Depot, USA, Inc.*, 06-0201, p. 12 (La. App. 4 Cir. 10/18/06), 943 So.2d 1219, 1228 (citing *King v. Phelps Dunbar, LLP*, 01-1735, p. 16 (La. App. 4 Cir. 4/2/03), 844 So.2d 1012, 1022); *see also Harris v. Boh Bros. Constr. Co.*, 20-0248, p. 8 (La. App. 4 Cir. 5/26/21), 322 So.3d 397, 405, *writ denied*, 21-00910 (La. 10/19/21), 326 So.3d 254 (citing *Sears*, 06-0201, p. 12, 943 So.2d at 1228). Likewise, "[a]rgument of counsel and briefs, no matter how artful, are not sufficient to raise a genuine issue of material fact." *Rapp*, 95-1638, p. 4, 681 So.2d at 437.

Even assuming the waiver rule did not apply and that the sequence of events issue was properly before this court, Ms. Moon's mere conjecture and unsupported speculation on this issue is insufficient to meet her evidentiary burden. For these reasons, we find Ms. Moon's sequence of events argument unpersuasive.

## DECREE

For the foregoing reasons, the judgment of the trial court is affirmed.

**AFFIRMED**